EDMUND WILSON, attorney-general of the State of New Jersey,

*v.*

BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF GLOUCESTER.

[Argued March 5th, 1914. Decided June 1st, 1914.]

1. A monument erected by the state on land owned by a county, though firmly imbedded in the ground and intended to be a permanent structure, retains its independence of the realty and its character as a removable fixture, and title thereto does not pass to the county; an agreement being implied from the county's consent to its erection that it was to remain personal property.

35

2. A county, by contributing the land for a monument erected by the state in commemoration of a battle, ceded the use of the land to the state, and the state acquired an easement to endure as long as the land should be used for the purpose to which it was dedicated.

3. Under *P. L. 1905 p. 163,* providing for the erection of a monument, and giving its care and supervision to the board of chosen freeholders of the county of Gloucester, and Joint Resolution No. 5 (*P. L. 1909 p. 549*), authorizing a patriotic society to place upon such monument inscriptions explanatory of the battle in commemoration of which the monument was erected—*Held,* such society, in making room for the tablets bearing such inscriptions, had power to remove a tablet officiously put on the monument by the commission which erected it.

4. If the inscription on one or more of the tablets placed on a monument erected by the state pursuant to Joint Resolution No. 5 (*P. L. 1909 p. 549*) violated the law, the power to correct it was a prerogative of the state to be effectuated through proper channels, and the board of chosen freeholders of Gloucester county, entrusted by statute with the care and supervision of such monument, had no right to forcibly remove the tablet.

On information, &c.

*Mr. Nelson B. Gaskill,* assistant attorney-general, for the state.

*Mr. John Boyd Avis,* for the defendant.

BACKES, V. C.

The state erected a memorial statue on park lands of the defendant known as Fort Mercer, in Gloucester county, to commemorate the battle of Red Bank fought during the revolutionary war, which upon being completed was delivered into the "care and supervision" of the board of freeholders of Gloucester county, the defendant, as provided by chapter 79 of the laws of 1905, p. 163. A commission appointed under the act chose the design of the monument and contracted for its completion, and selected the site in the park, as it was empowered to do. The Sons of the Revolution in New Jersey placed on each of the four sides of the monument a tablet with inscriptions explanatory of the battle, as authorized by a joint resolution of the legislature of 1909. *P. L. 1909 p. 549.* The tablets had the approval of the committee named in and as required by the resolution. In putting on these tablets it was necessary to dis-

place one which the monument-building commission had affixed, the inscriptions upon which dealt chiefly with facts attending the building of the statue. Evidently piqued at what was regarded as an intrusion upon its dominion over the monument, the board of freeholders promptly removed the displacing tablet and substituted the original. Thereupon the attorney-general filed this information to compel the restoration of the removed tablet and to restrain further interference. The charge in the information that the board would repeat what it had done if the offending tablet were restored, is not denied by the answer and must be taken as admitted.

The board of freeholders in justification of its conduct, sets up that the monument having been erected upon its land, it became a part of the realty and that the title thereto passed out of the state and the control over it, beyond the legislature. Although the monument is firmly imbedded in the ground, and within the scope of its usefulness and purpose, was intended to be a permanent structure, it nevertheless retained its independence of the realty and the character of a removable fixture. It was built on the lands of the county with the permission and consent of the board of freeholders, from which unqualified circumstance an agreement is to be implied between the state, as licensee, and the board, as landowner, that it was to remain personal property. *Bron. Fixt. 145; Pope* v. *Skinkle, 45 N. J. Law 39.* This rule obtains between individuals and, *a fortiori,* should it be applied when public property is involved. The language of the act under the authority of which the monument was erected plainly indicates that its erection upon the lands of the county was not to work a conversion of property and that the state's right of ownership in it should remain unimpaired and exercisable whenever and however the legislature saw fit so to do. The provision that upon its completion, only "the care and supervision of said monument or statue shall devolve upon and be vested in the board of chosen freeholders of the county of Gloucester," negatives any notion of a change of title and is an implied assertion of its retention by the state, in which the board, by accepting the care and supervision, acquiesced.

But a vindication of the state's right to the statue may be rested upon a broader basis than the rule of law applicable to removable fixtures. The contribution by the board of chosen freeholders of the land for a statue intended to be a permanent and lasting memorial of the valor and success of the colonial troops, was more than a mere permission or license. It was a cession by the county to the state of the use of the land, by which the state acquired an easement, to endure as long as the land should be used for the purpose to which it was dedicated.

Thus, in the exercise of its right of ownership the state appropriated funds for and delegated power to the patriotic organization already named, to purchase tablets with inscriptions explanatory of the battle and to place them on the monument. This work the defendant has prevented and threatens to continue to obstruct, which will be enjoined unless two additional grounds urged by counsel have merit. One is that as caretaker having the supervision of the monument, the duty was imposed upon the board to preserve the monument intact, as completed by the building commission and delivered to the board, and in this to prevent the removal of the commission's tablet; the other, that the inscription on the tablet substituted for the original is not explanatory of the battle, as required by the joint resolution. The answer to these contentions is that by the provision of the act above quoted, the state committed simply the "care and supervision" of the monument to the board of chosen freeholders, as its agent, subject at all times to the legislative control and direction, which relation the legislature undoubtedly has the power at any time to terminate as it has the right to add to, take from or altogether remove the monument if in its wisdom it should so elect; and that when the Sons of the Revolution, with the approval of the committee appointed by the joint resolution, selected four tablets, it was well within that body's power in making room for them on the monument to remove the one officiously put there by the building commission; and further, that if in its judgment the inscription on one or more of the four tablets was not to the taste of the board or violated the law, it was not the board's right to forcibly interpose. The power to correct was the state's prerogative, to be effectuated

through other channels. The board of freeholders, even though it had the care and supervision of the monument, in interfering with the work directed by the state, was as much a trespasser and wrong-doer as if the acts complained of had been committed by a stranger.

There will be an injunction perpetually restraining the board of chosen freeholders of the county of Gloucester from in any manner obstructing the Sons of the Revolution in New Jersey in removing from the said monument the building commission's tablet and in replacing the tablet heretofore removed by the board; and thereafter from removing the four tablets of the Sons of the Revolution or in any manner interfering with the same. This is not, however, to be construed as taking from the board its duty of care and supervision.

Costs will be awarded against the board.