The complainants seek a partition of three parcels of land of which Agnes Forbes, the mother of the complainant Robert C. Forbes, died seized, intestate. The complainants also pray an accounting from the defendant John Dewey Forbes, a brother of Robert, for rents and profits from possession of the lands of his mother since February 19th, 1945, the date of her death. Decreespro confesso were taken against all of the defendants except John. He filed an answer. He does not oppose a partition but he contends that two of the three buildings on the lands in question are his personal property, having been erected thereon with the permission of his mother. He asks that he be permitted to remove his buildings before a sale or partition is had, or that, upon a sale, the value of his buildings be added to his one-sixth share of the proceeds.
The three properties of which Agnes Forbes died seized are located in the village of Wrightstown, which directly adjoins Fort Dix. One of these properties is a town lot and bungalow; there is no substantial controversy with respect thereto. The two buildings, the ownership of which is disputed, are in the center of the business district of Wrightstown; one is a dining car and restaurant, the other a store and apartment building.
At final hearing objection was made by counsel for the complainants to the admission of testimony of John Dewey Forbes as to the transactions had with his mother. It was suggested that, Mrs. Forbes being dead, such testimony was barred by the Evidence Act, R.S. 2:97-2. Complainants now admit in their brief that such testimony was not inadmissible under the cited statute. Properly so. The statute precludes a party to a suit from testifying to transactions with a decedent only when the party is suing or being sued in a representative capacity. When a suit, as here, is between heirs and for the partition of their ancestor's lands the parties appear in their own right and not as the representatives of their decedent. Shotwell v. Stickle
(Court of Chancery), 83 N.J. Eq. 188; 90 Atl. Rep. 246.
Complainants also contended at final hearing that testimony of John as to oral permission given him by his mother *Page 522 
to erect the buildings upon her land was inadmissible because of the interdiction of the statute of frauds. Section 1 of that statute (R.S. 25:1-1) is dispositive of complainant's contention. It specifically recognizes that an interest in real estate may be created by parol, but provides that such interest shall have the force and effect only of an estate at will. This is all that the defendant John Dewey Forbes claims.
The distinguishing characteristics of a license in real estate are that it gives no interest in the land and that it may rest in parol. 33 Am. Jur. 398 ¶ 31. In 37 C.J. Sec. 607 ¶ 116, it is declared that a license not coupled with an interest, but to be exercised on the grantor's land, is not within the statute of frauds and may be granted by parol. In Hartman v. Powell,68 N.J. Eq. 293; 59 Atl. Rep. 628; affirmed, 68 N.J. Eq. 800;64 Atl. Rep. 1134, this court declared: "The terms of that statute [statute of frauds] declare that the force and effect of a parol agreement, creating an interest in lands, shall be to pass an estate at will only, whether it was asserted in law or in equity."
The question agitated in this case is not a novel one. Judge Cooley in his fourth edition of 2 Blackstone's Commentaries297, said: "Permission from the owner of land to another to erect and occupy a building upon his premises, although not given in writing, will make the building, when erected, the property of the builder. But this permission, properly called a license, is revocable at any time; but when revoked the licensee is entitled to the building, and may remove it." Chief-Justice Beasley, speaking for the Court of Errors and Appeals in Lawrence v.Springer, 49 N.J. Eq. 289; 24 Atl. Rep. 933; reversingSpringer v. Lawrence, 47 N.J. Eq. 461; 21 Atl. Rep. 41, said: "When A permits B to build a house upon his land, the situation almost necessarily implies the existence of some contract which is thus partly performed between them; * * *."
In King, Trustee, v. Morris, 74 N.J. Law 810;68 Atl. Rep. 162, our Court of Errors and Appeals said: "The doctrine that a structure, however costly, if placed upon the land of another by permission, which permission may be recalled at any time, becomes, in the absence of specific agreement, *Page 523 
irrevocably attached to the land upon which it is placed, is manifestly opposed to the intention implied in the very transaction. The inference springing out of such a license is that the land used is to be left as found, and the property so placed thereon shall remain the property of the user, and be removable as such." See, also, Berry v. Potter, 52 N.J. Eq. 664; 29 Atl. Rep. 323; reversed by the Court of Errors and Appeals, 53 N.J. Eq. 151; 32 Atl. Rep. 259.
At final hearing I had the opportunity to hear and observe not only John Dewey Forbes but also his brothers Robert C. Forbes and Samuel Forbes, and his sister, Marian Barr. All are very much interested in the outcome of this case; a decision adverse to John Dewey Forbes would cause him to lose a very substantial sum of money; a decision favorable to his brothers and his sister would give five-sixths of that sum to them. So, the testimony of the parties must obviously be checked against proven facts and circumstances. The testimony of John with respect to the general situation and the particular transactions had with his mother was circumstantial and definite. He seemed to me to be telling the truth. His statement that his mother gave him permission to erect his buildings was not denied, and his testimony that the buildings were erected at his expense was not controverted.
The point of Robert's testimony was that Mrs. Forbes had said that she put some money into the buildings and that her son John had not repaid her. Defendant denied that this was true; he testified that he had borrowed $800 from his mother to purchase provisions in order to open the diner after he had completed it; he said that he had repaid this loan. Even if Robert's story is correct, it is not inconsistent with the claim of John. Indeed, it lends some support to his contention, for it is not likely that the decedent would expect repayment of these moneys if they were expended on buildings she was erecting and which she regarded as her own. It should be noted also that John Dewey Forbes produced before the court receipted bills and canceled checks measurably substantiating his claims. Also, from the time he started upon his building project until the death of his mother his actions were those of one who had the right to erect these buildings and to occupy or lease them. *Page 524 
There can be no possible doubt but that Mrs. Forbes knew that her son John had erected the restaurant and the stores and apartments, in large part, upon her lands. Wrightstown is but a small village and John's home, where she lived, was only a short distance from the corner where the buildings were erected. Furthermore, when John was a patient in a hospital, his mother took charge of the diner and restaurant and operated them for him for about three months.
John has, since the year 1928, paid taxes on all the property involved in this partition suit.
It does not seem strange to me that Mrs. Forbes should have given her consent that John build upon her unimproved ground. For the last sixteen years of her life she lived with John and was supported by him. She assumed responsibility for and was raising his two children. After the fire Mrs. Forbes had made no effort to build on her land and in 1936, when John told her that he would build and operate a lunch car or restaurant, she sold him part of her ground. Later she agreed that John should erect his restaurant upon her corner lot, and she must have known of the fact when later he made improvements and additions to the building.
In October, 1940, John received an offer of $30,000 for the purchase of his restaurant building and business, including his mother's lot on which it stood, his adjoining lot and her unimproved lot. An agreement of sale was prepared and submitted to John and his mother for their consideration and their signatures. Mrs. Forbes, John testified, agreed to the sale and signed the agreement. That instrument specifically recited that the diner, with its equipment, name and goodwill were owned by John, and it provided for payment of separate fixed amounts to both John and Agnes Forbes. The proposed sale was not consummated.
As a result of the second World War and the expansion of Fort Dix, business was booming in Wrightstown in 1941. In addition to his restaurant, John had erected a building on another lot not involved in this suit and was renting it to the Y.M.C.A. Wishing to build a store and apartment building, John asked his mother to sell him her unimproved lot beside the lot he had purchased from her. She told him *Page 525 
that she didn't need the money; that he should go ahead and build his building on the two lots. He then caused to be constructed the ground floor of the second building that is in question in this case. It stands partly upon his lot and partly upon ground that was owned by his mother. It is a large building containing two stores on the ground floor and apartments on the second floor, which latter were added a year after the stores were built. John testified that the building cost him in excess of $18,000, and that to make way for this construction, he was forced to demolish a building he had previously erected on his lot at a cost of $3,000. To erect and equip the diner and restaurant, he testified, had cost him in excess of $13,000.
Another consideration may be mentioned before concluding this opinion. Complainants have come into equity and must do equity. It would be palpably unfair and unjust to permit Robert and his brothers and sister to benefit to the extent of approximately $26,000 at the expense of John, their tenant in common. Barrell
v. Barrell (Court of Chancery), 25 N.J. Eq. 173, 176;Wilson, Attorney-General, v. Gloucester Freeholders (Court ofChancery), 83 N.J. Eq. 545, 547; 90 Atl. Rep. 1021; Woolston
v. Pullen (Court of Chancery), 88 N.J. Eq. 35, 40;102 Atl. Rep. 461; Raritan Water Power Co. v. Veghte, 21 N.J. Eq. 463;
reversing Veghte v. Raritan Water Power Co., 19 N.J. Eq. 142;
and Polakoff v. Halphen (Court of Chancery), 83 N.J. Eq. 126; 89 Atl. Rep. 996.
I am inevitably led to the conclusion in this case that John Dewey Forbes had permission from his mother Agnes Forbes to erect the two buildings in question upon her land and to use them as his own. It follows that they are his property and they may be removed by him. If they are removed he must leave the lands of his mother, which he used by her license, as he found them.
A form of decree may be submitted providing for a sale of the two lots in question exclusive of the buildings, and of the bungalow property. *Page 526