JAMES S. SHOTWELL et al.

*v.*

JOHN A. STICKLE et al.

[Submitted February 10th, 1914.   Decided March 12th, 1914.]

1. Where, in a suit by the heirs of a wife to partition land, the husband answered and claimed the land under a resulting trust because he had furnished the purchase-money, the husband was not incompetent to testify as to statements by, and transactions with, the deceased wife, under the Evidence act of March 23d, 1900 (*P. L. 1900 p. 363 § 4*), since there was no representative relation between the heirs and the deceased wife.

2. The maxim that he who comes into equity must come with clean hands refers to willful misconduct in regard to the matter in litigation, and not to misconduct, however gross, which is unconnected therewith, and with which the adverse party has no concern.

3. In a suit for partition, by heirs of a wife, of land alleged to belong to her, and which the husband claimed under a resulting trust, evidence *held* to show that the husband furnished all the purchase-money.

4. Though, where a husband furnishes the purchase-money for land conveyed to his wife, the presumption is that it was intended as a gift, and hence no trust results, yet the presumption may. be rebutted.

5. In partition by heirs of a wife, in which the husband claimed the land under a resulting trust, evidence *held* sufficient to show that the husband, in furnishing the purchase-money for the conveyance to the wife, did not intend it as a gift, and hence a trust resulted.

On final hearing on bill, answer, cross-bill, replication and proofs.

This suit is brought for the partition of a farm near Johnsonsburg, in Warren county, formerly owned by one Isaac Stickle, who died in the month of May, 1900. He left a will by which, among other things, he appointed his three sons Joseph P. Stickle, Philip Stickle and John A. Stickle as executors thereof. He gave them power to make sale of his real estate, directing that such sale should be public and should be advertised in the same manner as is required by law for sale of lands by order

of any court. In pursuance of this direction the executors advertised the premises for sale in December, 1900, in the manner prescribed by the will, but were unable to procure any bids. An agreement was subsequently reached that John A. Stickle, one of the executors, should purchase the property for the sum of $7,000, which was reduced to writing and was executed on March 6th, 1901. It provided that the said John A. Stickle should pay to the executors of the will of Isaac Stickle the sum of $5,475.91 and assume a dower mortgage on the premises for the principal sum of $1,524.09; that the executors should advertise the farm at public auction for as soon a day as possible, and that at the sale the farm should be sold to such person as the said John A. Stickle should designate at whatever price or amount the same should be bid up to, and upon the delivery of the deed the said John A. Stickle bound himself to pay the said sum of money, which was to be regarded as the purchase price, notwithstanding the sum or amount for which the said farm should be struck off and sold. Two of the executors, Joseph P. Stickle and Philip Stickle, covenanted that they would advertise the farm and sell the same to John A. Stickle for the sum above mentioned, and deliver to him or to such person as he might designate a good and sufficient deed for the price aforesaid, notwithstanding the sum or price at which the farm might be struck off at the sale. It was further provided that the share of John A. Stickle in his father's estate should be taken as a payment on account of the purchase-money, and that in case he neglected or refused to receive the deed and pay the purchase-money his said share should be forfeited to the executors; that the sale should be advertised for April 13th, 1901, and the deed be delivered at the office of George A. Angle at Belvidere on Saturday, April 20th, 1901.

The farm was advertised for sale as agreed; it was purchased in the name of Martha Stickle, the wife of John A. Stickle, and the deed was delivered at the office of Mr. Angle on April 20th following. The deed was taken by John A. Stickle to the office of the county clerk and left there for record, he paying the clerk's fee therefor. At this time John A. Stickle and his wife were living on the farm in question as tenants of the father's

estate. After the delivery of the deed they returned home, continued their occupation of the premises until the death of Martha Stickle, which occurred on May 15th, 1909. During all this period the title to the farm remained in Martha Stickle, and she died without having made conveyance thereof to any one. She left as her heirs-at-law the persons named in that behalf in the bill of complaint, among the others, her brothers James S. Shotwell and Ivan Shotwell, the complainants in this suit, who filed their bill for the purpose of obtaining partition of the said lands among the heirs-at-law of the said Martha Stickle.

John A. Stickle, her husband, alleges in his answer and in his cross-bill that at the time of the sale of the farm and the delivery of the deed he paid all the purchase-money out of his own funds, and that his wife agreed that she would make a deed to him at any time when he might request it or when it was convenient for the parties to transfer the title. He likewise says that he erected a new house and barn upon the premises, and repaired other buildings, which cost him in the aggregate over $5,000, and that he made other improvements on the farm sufficient to bring up his total expenditure for betterments to the sum of $6,000; that he paid the taxes, averaging ninety dollars per annum; the insurance premiums, the interest on the dower mortgage to Mrs. Lang, and that during the whole period of his possession he conducted the business of farming on the said premises at his own expense, for his own account, and took the proceeds thereof as his own; that his wife not only contributed nothing to the purchase-money, but that she had a separate estate of only about $1,600, no part of which he ever received, which was always invested by her for her own benefit and in her own way.

At the time of the death of Mrs. Stickle she left no children. However, a child was born to them on September 21st, 1891. The defendant John A. Stickle says that this child was born alive. This is denied by the complainants and the other defendants, who allege that the child was born dead, and that no rights whatever can be predicated on this event. It likewise appears, and is undisputed, that John A. Stickle subsequently

to the death of his wife purchased the interests of James I. Shotwell and Dellie Shotwell, a brother and sister of Mrs. Stickle, for the sum of $2,200.

The questions arising are whether John A. Stickle paid all the purchase-money for the said premises, whether the circumstances show that a trust resulted from the wife to him, growing out of the payment of such purchase-money, whether in case a resulting trust is not so found the said John A. Stickle by virtue of his marriage, the seizin of the wife of the lands in question and the birth of a child alive confers upon him a right of curtesy in the said lands.

*Mr. Thomas M. Kays* and *Mr. Henry Huston,* for the complainants.

*Mr. George M. Shipman* and *Mr. William H. Morrow,* for the defendants.

HOWELL, V. C.

Before reaching the merits of the controversy it is necessary to determine a preliminary question relating to the admissibility of certain evidence which was offered on the part of the defendant John A. Stickle. The offer was to introduce by him statements made by and transactions had with Martha Stickle, his wife. This offer was objected to upon the ground that its reception would be a violation of the fourth section of the Evidence act of 1900, for the reason that the heirs-at-law of Martha Stickle were her representatives in the suit within the meaning of the statute. The evidence offered was received subject to be stricken out if the court upon consideration should conclude that it was incompetent. Upon consideration of the circumstances, and the examination of the authorities, I have reached the conclusion that the evidence was properly admitted, and I reach this conclusion upon the ground that there is no representative relation in the case which can be held to bring it within the statute. The parties here represent no one; they are each and all litigating concerning his and their own individual

rights; what they shall take by the final decree they will take not as anybody's representatives, but for themselves individually, and in their own right. Such was the holding of the court of errors and appeals in *Smith* v. *Smith, 52 N. J. Law 207,* which was an action for dower brought by the widow against the lessees and devisees of the husband; and in *McKinley* v. *Coe, 66 N. J. Eq. 70,* which was an application by the payee of a note given by the testatrix whose will charged her debts on her lands for a direction that the proceeds of sale of land sold in partition proceedings should be applied to the payment of her note; followed in *Cowdrey* v. *Cowdrey, 71 N. J. Eq. 353,* the latter case having been affirmed on appeal in *72 N. J. Eq. 951.* The precise question was decided by Vice-Chancellor Emery in the case of *Small* v. *Pryor, 69 N. J. Eq. 606,* a case in which the circumstances closely resemble those before the court in the case at bar. There the complainant filed a bill for partition. The widow of the decedent filed a cross-bill, claiming the property under a resulting trust on the ground that although she had furnished the purchase price, the title was taken in the name of her husband. The evidence of the widow to show the circumstances was admitted upon the authority of the cases above cited; it was held, however, that the weight of the evidence was insufficient to establish the trust. I therefore conclude that the testimony in this case was properly admitted, and the motion to strike the same from the record is denied.

There is yet another matter to be examined before we reach the merits. The objection is made that John A. Stickle ought not to receive any relief from this court because he has come into court with unclean hands, that is to say, that by making the agreement of March 6th, 1901, with his brothers and co-executors, Joseph P. Stickle and Philip Stickle, touching the disposition of the lands of which his father died seized, he committed a fraud upon his brothers and sisters, and that this was intensified by the provision in the agreement that he should only pay $7,000 for the farm, no matter what the highest bid was. It may well be that under certain circumstances he might have been called to account for these irregular transactions, the principle being that no trustee shall be allowed to purchase at

his own sale. *Smith* v. *Drake, 23 N. J. Eq. 302; Marr* v. *Marr, 73 N. J. Eq. 643.* But it will be observed that this is not a proceeding on behalf of the devisees under the will of Isaac Stickle, but is an entirely separate and distinct cause of action. Possibly the heirs of Isaac Stickle might have set aside the transaction, but it appears by the evidence that they knew all about it, acquiesced in it and accepted their respective shares of the purchase-money. This is a condonation of the maxim of equity appealed to and estops them from obtaining any decree adverse to the transaction; but the maxim does not reach so far. It must be understood to refer to willful misconduct in regard to the matter in litigation, and not to misconduct, however gross, which is unconnected therewith and with which the opposite party in the cause has no concern. *1 Pom. Eq. Jur.* § *399; Sm. Eq. Man.* § *39; Wilkinson* v. *Fowkes, 9 Hare 592; Gibson* v. *Goldsmid, 5 D., M. & G. 757.* It is obvious that the cause of action to which that maxim might apply is a cause of action in favor of the Stickle heirs and devisees, and not a cause of action which relates to the estate of which Martha Stickle died seized; hence the maxim has no application to the case in hand.

The first question pertaining to the merits of the controversy is whether John A. Stickle paid to his brothers all the purchase-money for the said premises. Deducting the dower mortgage, $1,524.09, there remained to be paid $5,475.91. This was done in the following manner: There was first the check of Mrs. Stickle for $4,375.91, check for milk which Mr. Stickle carried with him for $155.34; his interest in his father's estate, $949.44. This left him short, as his story is, $49.54, which amount was advanced by his brother Philip, to whom he afterwards repaid the amount. These figures overrun the amount of the payment, and the discrepancy is not explained, but while they do not exactly coincide, I am satisfied that the payment was made substantially in the way just mentioned. I am likewise satisfied that the money for which Mrs. Stickle gave her check, viz., $4,375.91, was wholly the money of John A. Stickle; it was made up in this manner: He had on deposit in the Merchants National Bank of Newton $1,209.94; he sold a mortgage which he held on the Andover Methodist Church for $1.872;

he collected from Frank Carr $420; borrowed from Isaac Carr $400, and from his wife $60; deposited check for $155.34; had his note discounted at the bank, and obtained as proceeds $258.63. This money was transferred to the credit of Mrs. Stickle, and her check was thereupon drawn against it. It seems very clear that the whole fund was provided by John A. Stickle, and that his wife paid no portion of it whatever. In fact, it appears that she had no separate estate of her own excepting about $1,600, and that no portion of that went into the purchase of the farm.

Did a trust result in favor of the husband from the circumstances appearing in evidence? Ordinarily, it is presumed, that when a husband voluntarily transfers property to his wife he does it by way of gift or settlement. This, however, is a mere presumption and is rebuttable if facts exist sufficient for the purpose. In my opinion, the facts do exist, and the presumption is rebutted, and a resulting trust has been established in favor of the husband. It is very plain that on March 6th, 1901, when the agreement was made between John A. Stickle and his brothers, that John A. Stickle intended to become the purchaser and the owner of the farm. The agreement was with him and for his benefit, but inasmuch as he was one of the executors and had been advised that he could not appear in the transaction, the agreement provided that the property should be knocked off and sold to such person as the said John A. Stickle should designate. He did designate his wife. The property was struck off to her and the deed made to her. The delivery of the deed took place in the office of Mr. Angle, one of the solicitors of this court, and in his presence it was stated by Mrs. Stickle that while she was the purchaser of the farm she wanted to deed it to her husband; the making of the deeds to transfer the property to the husband was talked over, and when they found it would require the preparation of two deeds, they put the matter off because of the limited time before them. His recollection is that they said it was getting late, that they had a long distance to drive, and that they would drop into his office some time when they came to Belvidere and have the deeds made later on; and he finally says that Mrs. Stickle told him that she

came along with her husband on that day for the purpose of deeding the place back to him.

It is in evidence that Mrs. Martha Stickle stated to Laura M. Stickle, Martha Emmons, Maud Wildrick and Minnie Messler, respectively, at various times, that she had no money in the farm, that it all belonged to her husband, and that she intended to deed it to him. In addition to this is the testimony of Mr. Stickle himself, in which he sets out the conversation that took place between him and his wife on this point, to the effect that his wife agreed to convey the property to him whenever it became convenient to have the proper conveyances prepared.

. This view of the case entitles the defendant John A. Stickle to the title to and possession of the premises in question, and disentitles the complainants to a partition as prayed by the original bill. It likewise makes it unnecessary to consider the questions concerning the birth of the child, and whether it was born alive or dead. The decree will therefore dismiss the original bill and provide that the heirs-at-law of the said Martha Stickle hold the said lands and premises in trust for the defendant John A. Stickle, and that they execute a proper deed or deeds of conveyance to the said John A. Stickle in accordance with the prayer of his bill.

Under the peculiar circumstances of this case, I do not think that either party should recover costs or counsel fees against the other.