ALLEN L. MIMS, JR. v. MARSHA P. MIMS

No. 109

(Filed 27 January 1982)

1. **Husband and Wife § 14; Trusts § 13.4— marital real estate—one spouse furnishing consideration—presumption of gift in other spouse whether husband or wife**

    While neither the U.S. Constitution nor the N.C. Constitution requires courts to employ presumptions of gift or trust in settling property disputes, there are compelling reasons for modifying the rules which grew out of a legal system in society so that the same presumption applies whether the husband or the wife receives title to marital property. First, the original rationale for employing different presumptions is no longer viable as no longer in all cases is the husband the supporting and the wife the dependent spouse. Second, other courts have chosen to employ the presumption of gift whether the husband or wife is the grantee of property purchased by the other spouse. Third, commentators have supported presumptions of gifts for both husbands and

wives. Fourth, our legislature has recently indicated its view that the same rule should apply to both spouses in determining ownership of property. Therefore, in all cases to which the Equitable Distribution of Marital Property Act, G.S. 50-20, is not applicable, the rule shall be that where a spouse furnishing the consideration causes property to be conveyed to the other spouse, a presumption of a gift arises, which is rebuttable by clear, cogent, and convincing evidence. All cases holding to the contrary are overruled.

2. **Husband and Wife § 14; Trusts § 13.4— marital property—ability to rebut presumption of gift—summary judgment improper**

In an action whereby plaintiff husband sought to be declared the sole beneficial owner of certain residential real estate, it was error to grant summary judgment for defendant wife where plaintiff presented evidence indicating that he may, at trial, be able to (1) rebut the presumption that he made a gift to defendant of an entirety interest in the real property, and (2) make out a *prima facie* case for a resulting trust in his favor. It was undisputed that plaintiff furnished from his separate funds the entire consideration for the real property before or at the time title passed, and there was substantial evidence that plaintiff at all times intended for the property to be his alone and so advised the defendant at and before the closing.

3. **Husband and Wife § 14; Trusts § 13.4— deficiencies in complaint—reformation of deed—denominating claim based on mutual mistake—facts sufficient to state claim for resulting trust**

Where both husband and wife understood that a deed to property would be made to both parties as husband and wife both before and at the time of closing, and the only mistake supported by the evidence was husband's erroneous understanding of N.C. law governing deeds, the court could not reform the deed on the ground of mutual mistake. Husband's incorrect choice of legal theory should not have resulted in dismissal of his claim, however, as the allegations in the complaint gave sufficient notice of the wrong complained of and as plaintiff presented a sufficient evidentiary showing to allow him, at trial, to prove that defendant wife holds on resulting trust for him.

DEFENDANT'S motion for summary judgment was granted by *Judge James H. Pou Bailey* at the 19 March 1979 Civil Session of WAKE Superior Court. The Court of Appeals affirmed.[1] The Supreme Court allowed discretionary review on 4 November 1980. The case was argued as No. 10, Spring Term 1981.

*McDaniel and Heidgerd, by L. Bruce McDaniel, Attorneys for plaintiff appellant.*

*Gulley, Barrow & Boxley, by Jack P. Gulley, Attorneys for defendant appellee.*

1. Reported at 48 N.C. App. 216, 268 S.E. 2d 544 (1980).

EXUM, Justice.

Plaintiff seeks by this action to be declared the sole beneficial owner of certain residential real estate. The deed to the realty was made to both parties as husband and wife, but it is undisputed that plaintiff furnished the entire purchase price from his separate estate. The principal question presented is whether the evidentiary showing before Judge Bailey entitles defendant to summary judgment. Judge Bailey believed it did and the Court of Appeals agreed. We disagree and reverse. We also carefully reconsider our old rules relating to presumptions of gift and resulting trust in transactions of this kind and determine that the presumptive gift rule should apply in all such cases not governed by the new Equitable Distribution Act.[2]

These parties were married on 19 May 1973, separated on 5 June 1977, and divorced on 28 July 1978. On 3 December 1974 plaintiff purchased the real estate in question, which apparently was a residential house and lot purchased as a marital home. He filed this action on 19 August 1977, shortly after the parties' separation. Plaintiff sought equitable relief, praying for reformation of the deed on the ground of mutual mistake and a declaratory judgment that he is the sole owner of the property.

Defendant answered and counterclaimed denying most of plaintiff's material allegations and asserting laches as a defense to plaintiff's action. She moved for summary judgment, offering the pre-trial depositions of the parties and a copy of an "Offer to Purchase," which bears the purported signatures of both parties and contains a provision directing that the deed be made to both parties as husband and wife.

According to plaintiff's deposition, he did sign the "Offer to Purchase" which was executed on 16 November 1974. However, he testified, "I did talk with the realtor about it at the time we made the Offer. I asked him why it had to be titled in both people's names, and he said in the State of North Carolina that it had to be. I am talking about Jim Stevenson and Richard Smith. Richard Smith is the one that made that comment." After the of-

---

2. An Act for Equitable Distribution of Marital Property, ch. 815, 1981 N.C. Sess. Laws (Michie) (primarily to be codified at G.S. 50-20). This Act and its effect on this aspect of our decision is more fully discussed later in the text.

fer was accepted, plaintiff began to consider how he would finance the purchase. He "decided that I would pay cash for it with money that I have received from my grandfather and my father and that is the way I handled paying for it. I am sure I told her that, I didn't really talk too much of the business. You see, as far as I was concerned I was buying the house. It was my house. Her salary or anything, nothing of her stuff was going to be applied against the purchase price of the house and so I don't believe I did too much commenting at all on how it was. . . . I don't believe I talked to her too much about how the title was written." Plaintiff did pay, he said, $69,000.00 cash for the property at the closing after having paid the $1,000.00 earnest money which accompanied the offer. He said, "[t]he closing was in December of 1974. The deed was from Louis E. Poole & Associates to Allen L. Mims, Jr., and wife, Marsha P. Mims. I saw the deed at the time of the closing and since I had been informed by the realtor finding a house for us that in North Carolina there wasn't any alternative, I asked at the time you know, can it be in my name, I mean this is my personal check and Richard said that is the way it's got to be in both names in North Carolina. . . . Marsha and I discussed the fact that I told her I was putting up the money and that as far as I was concerned, it was my money because it was my money beforehand, and it was going into this thing and it was my house. And at the time she said 'I know it.' That was at the closing. I took my realtor's word, I figured he was in real estate and sold houses and stuff and he ought to know. Most of that came up when we signed the Offer. I can't be certain that Mrs. Mims was present at the closing."

According to defendant's deposition, she did not attend the closing and she did not discuss the purchase of the house "in detail prior to the closing." She said the plaintiff told her "he was paying for it but it was for us." Defendant testified that plaintiff did not claim sole ownership of the house until after the closing. "[W]henever we would get into an argument," she said, "he would make the statement that this is his house; that he paid for it. He repeatedly told me afterwards that it was his house." Defendant recalled no "conversation between my husband and the real estate agent at the time the offer to purchase was signed. I don't recall hearing the real estate agent tell him that it had to be put in both names even though he wanted it in his name. I don't know

that it wasn't said, but I could have been reading something. I don't recall that. I do not recall any question my husband might have raised to the real estate agent or anybody else before the house is purchased about the way it was to be titled. I am saying that I do not recall now whether anything like that was discussed. He paid the total purchase price for the house."

In opposition to defendant's motion for summary judgment, plaintiff relied on so much of the deposition testimony as was favorable to him. He also relied on his affidavit which was submitted to and considered by Judge Bailey. He swore in this affidavit, among other things, that the defendant's name "was included as a grantee pursuant to specific instructions from the realtors involved and/or by a mistake of the draftsman. . . . The name of my wife was therefore included on the deed by mutual mistake insofar as my wife and I were concerned. . . . Prior to this closing, at the closing, and at all times since that closing, I told the defendant . . . that since I was paying for this real estate, that it was mine and mine alone. Prior to this closing, at the closing, and at all times since that closing, the defendant . . . agreed with me that this real estate was mine and mine alone. . . . At no time did I intend to make a gift of this realty or any part thereof to the defendant . . . nor have I ever made such a gift to the defendant."

After the hearing, Judge Bailey allowed summary judgment for defendant on the ground that there is "no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law."

The Court of Appeals concluded that plaintiff had alleged a claim for reformation of a deed on the ground of mutual mistake and that the evidence made before Judge Bailey demonstrates as a matter of law that plaintiff will not be able to make out such a claim at trial. The Court of Appeals rejected plaintiff's argument that he may be able to sustain his claim for a resulting trust because plaintiff has "neither alleged nor proved any type of trust."

We agree with the Court of Appeals, for reasons set forth *infra*, that the evidentiary showing on the summary judgment motion demonstrates as a matter of law that plaintiff will not be able to make out at trial a claim for mutual mistake. We believe,

however, that the Court of Appeals erred in limiting plaintiff to this theory of recovery. Both the pleadings and the evidentiary showing on the motion for summary judgment indicate plaintiff may be able to obtain the relief he seeks at trial by proving the facts necessary to give rise to a resulting trust in his favor.

We will discuss, first, some principles pertaining to resulting trusts, their current viability, and their applicability to the instant case. Then we will demonstrate why the pleadings and evidentiary showing proffered by plaintiff entitle him to trial on the issue of whether defendant holds her interest in the contested property on resulting trust for him. Finally, we will explain why plaintiff's claim of mutual mistake and defendant's claim of laches are not germane to this action.

I

A resulting trust arises "when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. . . . A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another." *Teachey v. Gurley*, 214 N.C. 288, 292, 199 S.E. 83, 86-87 (1938).[3] The trust is created in order to effectuate what the law presumes to have been the intention of the parties in these circumstances—that the person to whom the land was conveyed hold it as trustee for the person who supplied the purchase money. *Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222 (1957); *Bowen v. Darden*, 241 N.C. 11, 84 S.E. 2d 289 (1954); *Avery v. Stewart*, 136 N.C. 426, 48 S.E. 775 (1904); Bogert, The Law of Trusts and Trustees, § 454 (2d ed. rev. 1977) (hereinafter "Bogert"). "The classic example of a resulting trust is the purchase-money resulting trust. In such a situation, when one person furnishes the consideration to pay for land, title to which

---

3. *Teachey* discusses the differences between express trusts, constructive trusts, and resulting trusts. Express trusts "are created by contract, express or implied." Constructive trusts "are raised by equity in respect to property which has been acquired by fraud, or where though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Id.* For a similar discussion of the distinctions among the types of trusts, see *Bowen v. Darden, infra* in text. For other factual examples of resulting trusts, see *Avery v. Stewart, infra* in text.

is taken in the name of another, a resulting trust commensurate with his interest arises in favor of the one furnishing the consideration. The general rule is that the trust is created, if at all, in the same transaction in which the legal title passes, and by virtue of the consideration advanced before or at the time the legal title passes." *Cline v. Cline*, 297 N.C. 336, 344, 255 S.E. 2d 399, 404-05 (1979).

Under the common law a notable exception to this rule developed. "The rule that a resulting trust is raised in favor of the person who pays the purchase-money for land, though the title may be made to another, is subject to the qualification that where the person who pays the price is under a legal, or even, in some instances, a moral obligation to maintain the person in whose name the purchase is made, there is a presumption in equity that the purchase is intended as an advance or gift to the recipient." *Thurber v. LaRoque*, 105 N.C. 301, 306-07, 11 S.E. 460, 462 (1890). Thus, where the husband provides the entire purchase price for realty but causes the title to be placed in both his name and his wife's "a resulting trust does not arise in favor of the husband. . . . Instead there is the presumption of a gift to the wife of an entirety interest in the property." *Tarkington v. Tarkington*, 301 N.C. 502, 506, 272 S.E. 2d 99, 101 (1980). No such exception has developed, however, when it is the wife who furnishes the purchase price yet causes title to be placed in the name of her husband. *Tarkington v. Tarkington, supra; Bowling v. Bowling*, 252 N.C. 527, 114 S.E. 2d 228 (1960); *Deese v. Deese*, 176 N.C. 527, 97 S.E. 475 (1918). Thus, the rule has developed in this state "that a gift is presumed where a husband takes title in the name of his wife, but that a resulting trust and not a gift is presumed where a wife purchases land in the name of her husband." 2 Lee, North Carolina Family Law, § 113, n. 43 (4th ed. 1980) (hereinafter "Lee").

II

[1] Plaintiff challenges the fairness of these rules governing conveyances to spouses and contends that they unconstitutionally discriminate on the basis of sex. He contends that if a resulting trust is presumed in favor of the wife when she buys property but has it titled in her husband's name, the same rule must be applied in favor of the husband who acts similarly. Thus, plaintiff

Mims v. Mims

argues, he is entitled in this case to the benefit of a presumptive resulting trust in his favor.

Clearly, neither the United States Constitution nor the North Carolina Constitution require courts to employ presumptions of gift or trust in settling property disputes. These presumptions are not constitutional concepts, rather they are equitable tools developed long ago by courts attempting to give effect to the probable intention underlying property transactions. Thus, we need not resort to constitutional analysis in order to correct disparities caused by rules that grew out of a society and a legal system which generally treated men and women differently. If these ancient rules no longer serve the purpose for which they were developed—the effectuation of the intention of the parties in the majority of cases—then this Court has the power, although a power not to be used casually, to make necessary modification of the rules. We think there are compelling reasons, and both parties seem to agree,[4] for modifying our rules so the same presumption applies whether the husband or the wife receives title to the property.

One reason for changing our rules so the same presumption applies to husbands as to wives is that the original rationale for employing different presumptions is no longer viable. As Professor Scott has noted, these rules evolved out of a society in which the husband "controlled the family wealth" and the wife and children depended upon him in all instances for support. 5 Scott on Trusts, § 442 at 3340 (3d ed. 1967) (hereinafter "Scott"). "It was natural for him to make gifts to his wife and children, but quite unnatural to expect that they should make gifts to him. The wife, indeed, could not make gifts until the court invented the idea of a married woman's separate estate." *Id.* Wives were generally thought to be under the domination of their husbands, and were subject to various legal disabilities because it was assumed they lacked practical business experience. Bogert, § 460

4. Defendant's brief states: "The reason for the difference in the presumptions no longer exist [sic]. If the Court were to get to the constitutionality of the presumption, it would either have to rule: (1) If either spouse furnishes the consideration for a conveyance, there is a presumption of a gift in favor of the other spouse; (2) If either spouse furnishes the consideration for a conveyance, there is a presumption of a resulting trust in favor of the spouse furnishing the consideration; or (3) There is no presumption at all."

at 728. The law, consequently, set up presumptions favoring the wife "partly out of a desire to protect her in her subordinate and inferior position against the importunities and influence of her husband. In addition, it would have been natural for her to make her husband manager or trustee of her property for her benefit, on account of her legal disabilities and lack of business experience and capacity." *Id.* "[A] married woman . . . [was] presumed to have acted under the coercion of her husband." *Sprinkle v. Spainhour*, 149 N.C. 223, 226, 62 S.E. 910, 911 (1908).

These notions no longer accurately represent the society in which we live, and our laws have changed to reflect this fact. No longer must the husband be,[5] nor is he in all instances the sole owner of the family wealth. Bogert, *supra*, § 460 at 728. No longer is the wife viewed as "little more than a chattel in the eyes of the law." *Nicholson v. Hospital*, 300 N.C. 295, 298, 266 S.E. 2d 818, 820 (1980). No longer in all cases is the husband the supporting and the wife the dependent spouse.[6] No longer is the wife thought generally to be under the domination of her husband.[7]

Second, other courts, some for many years and some only recently, have chosen to employ the presumption of gift whether the husband or the wife is the grantee of property purchased by

5. "The married woman's provision in the North Carolina Constitution of 1868, Article X, Section 6, abolished this unrealistic legal concept of married women, and provided that a wife's property no longer automatically became that of her husband upon marriage." *Nicholson v. Hospital*, 300 N.C. 295, 298, 266 S.E. 2d 818, 820 (1980).

6. A dependent spouse is "a spouse, whether the husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance." G.S. 50-16.1(3). And " '[s]upporting spouse' means a spouse, whether husband or wife, upon whom the other spouse is actually substantially dependent." G.S. 50-16.1(4) (definitions used in statutes relating to alimony).

7. Until January 1978, a married woman could not validly transfer real property to her husband in a non-testamentary conveyance without a private examination before a certifying officer. G.S. 52-6 (1976). This requirement for a private examination was repealed by Act of May 13, 1977, ch. 375, § 1, 1977 N.C. Sess. Laws, effective 1 January 1978. (Even under the private examination statute, however, a married woman could make a parol contract with her husband to hold title to land conveyed to her by a third party for the husband's benefit without undergoing a private examination because such an agreement did not involve her separate estate. *Williams v. Williams*, 231 N.C. 33, 56 S.E. 2d 20 (1949); *Bass v. Bass*, 229 N.C. 171, 48 S.E. 2d 48 (1948); *Carlisle v. Carlisle*, 225 N.C. 462, 35 S.E. 2d 418 (1945).

the other spouse. The Supreme Court of Pennsylvania in *Butler v. Butler*, 464 Pa. 522, 347 A. 2d 477 (1975), considered these presumptions in light of the adoption in 1971 of the Pennsylvania Equal Rights Amendment to the Pennsylvania Constitution.[8] The Pennsylvania Court said when the property at issue was entireties property, 464 Pa. at 528, 347 A. 2d at 480:

> "As we observed in *Di Florido v. Di Florido*, 459 Pa. 641, 331 A. 2d 174, 179 (1975), the husband is no longer necessarily the 'sole provider,' and it is likely that both spouses have contributed to the goods and furnishings of the household. Assuming then that both parties in a marriage provide for each other, anytime either a husband or wife contributes towards the purchase of entireties property their contribution is presumed to be a gift to the other."

Some courts that employ a presumption of gift when either spouse is the payor of property taken in the name of the other spouse include Connecticut, Georgia, Massachusetts, Montana, Nebraska, and Washington. *See, e.g., White v. Amenta*, 110 Conn. 314, 148 A. 345 (1930); *Printup v. Patton*, 91 Ga. 422, 18 S.E. 311 (1893); *Hogan v. Hogan*, 286 Mass. 524, 190 N.E. 715 (1934); *Emery v. Emery*, 122 Mont. 201, 200 P. 2d 251 (1948); *Peterson v. Massey*, 155 Neb. 829, 53 N.W. 2d 912 (1952); *Denny v. Schwabacher*, 54 Wash. 689, 104 P. 137 (1909).

Third, commentators have also supported presumptions of gift for both husbands and wives. For example, Professor Lee states in Lee, *supra*, § 113 at 45, that:

> "Property rights should not depend upon the sex of the individual. Since a husband is no longer necessarily the 'sole provider,' there should be a presumption that either spouse has made a gift to the other. The traditional law applicable in a case where a husband furnishes the entire purchase price of real property to be conveyed to himself and his wife should be applicable where a wife with her own funds purchases real property to be conveyed to herself and her husband."

---

8. That amendment, according to the Pennsylvania Court, keeps the law from imposing "different benefits or different burdens upon members of a society based on the fact that they may be man or woman." 464 Pa. at 527, 347 A. 2d at 480.

Professor Bogert also discusses several bases for presuming a gift when the husband is payor, and shows why they are applicable when the wife is payor. In Bogert, *supra*, § 460 at 727, he writes:

"A wife is normally not under a legal duty to support her husband and so one element which furnishes a foundation for the gift presumption where the husband pays is missing where the wife pays the consideration. Yet it may with some reason be urged that a wife is under a moral duty to aid her husband financially in his effort to maintain the family. Furthermore, it would seem arguable that affection running from wife to husband is on the average as strong as that running from husband to wife and so that gifts based merely on a high degree of attachment are as natural and common in one case as in the other. In addition it would seem that wives in disposing of their property in anticipation of death, very generally make gifts to their husbands. Taking all these elements together, a good case can be made for applying the same presumption to the wife as payor as is used when the husband pays."

*Tiffany* similarly states that "reason would seem to support the view in favor of the presumption that a gift was intended," in discussing the dichotomy between courts presuming a gift when the wife is payor and those presuming a trust. 1 Tiffany, Real Property, § 272 at 461 (3d ed. 1939) (hereinafter "Tiffany").

Finally, our legislature has recently indicated its view that the same rules should apply to both spouses in determining ownership of property. In An Act for Equitable Distribution of Marital Property, ch. 815, 1981 N.C. Session Laws (Michie) (primarily to be codified at G.S. 50-20) (hereinafter "The Equitable Distribution Act"), the legislature mandated that one rule, the same for husbands as for wives, would govern property division between them upon dissolution of the marriage. The Act provides in part:

"§ 50-20. *Disposition of separate and marital property upon divorce.*—(a) Upon application of a party, the court shall determine what is the marital property and shall provide for an equitable distribution of the marital property between the parties in accordance with the provisions of this section.

Mims v. Mims

(b) For purposes of this section:

(1) 'Marital property' means all real and personal property acquired by either spouse during the course of the marriage and presently owned, except property determined to be separate property in accordance with subdivision (2) of this section.

(2) 'Separate property' means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. *However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. Property acquired in exchange for separate property shall be considered separate property regardless of whether the title is in the name of the husband or wife or both.* The increase in value of separate property and the income derived from separate property shall be considered separate property.

\*   \*   \*   \*   \*   \*

(c) There shall be an equal division by using net value of marital property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property equitably. Factors the court shall consider under this subsection are as follows:

. . .

(6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker:

. . .

(8) any direct contribution to an increase in value of separate property which occurs during the course of the marriage;" (Emphasis supplied.)

This act became effective on 1 October 1981 and applies "only when the action for an absolute divorce is filed on or after that date." *Id.* at § 7.

We do not purport here definitively to construe this new statute. It does appear, however, that in the context of a divorce and the "equitable distribution" of all "marital property" the legislature has opted for a rule that where land or personalty is purchased with the "separate property" of either spouse, it remains the "separate property" of that spouse regardless of how the title is made. This statute will, of course, govern all cases to which it applies by its terms.

In all cases, however, to which the statute is not applicable the rule shall be that where a spouse furnishing the consideration causes property to be conveyed to the other spouse, a presumption of gift arises, which is rebuttable by clear, cogent and convincing evidence. The extent of the gift is determined by the degree to which the title reflects an interest in the grantee disproportionate to the consideration supplied by the grantee. All cases holding to the contrary are hereby overruled.[9] This is the rule which we will apply in this case. We believe it is the better rule because it recognizes that such transfers are normally motivated by love and affection and the desire to make a gift. As both Professor Scott and our own Robert E. Lee have accurately observed, we should not maintain a rule of law premised on the belief "that husbands have a greater affection for their wives than wives have for their husbands." Scott, § 442 at 3339; *accord*, Lee, § 113 at 44, n. 43.

Neither do we feel compelled to apply the presumptive trust, as opposed to the presumptive gift rule which we here adopt,

---

9. The most recent of these cases is, of course, *Tarkington v. Tarkington*, *supra* in text, 301 N.C. 502, 272 S.E. 2d 99, where we considered changing the rule but declined to do so saying simply, "[t]he facts of the case before us offer no compelling reason to change this long-standing presumption rule, favorable to the wife in this case." *Id.* at 506, 272 S.E. 2d at 102. Since *Tarkington* the legislature has enacted The Equitable Distribution Act, discussed at length in the text, evidencing unmistakably the public policy of this state to be that spouses should be treated alike in their property transactions with each other. In light of this Act, we now think it appropriate for this Court to change its common law rule so that in all cases to which The Equitable Distribution Act does not apply, husbands and wives will nevertheless be treated the same in their property transactions with each other.

simply because the legislature seems to have shown a preference for a variant of the trust rule in the Equitable Distribution Act. Although the Act does not deal in presumptions, it does provide that where "separate" property is given in exchange for property acquired during the marriage, such new property so acquired "shall be considered separate property regardless of whether the title is in the name of the husband or wife or both." This statutory rule must be understood in the context of the statute's primary emphasis on the equitable distribution of "marital" property upon dissolution of the marriage. The legislature sought to achieve this primary goal by providing a simple way to distinguish "marital" from "separate" property. How simply this aspect of the statute will actually operate will be determined only when the courts must apply it to specific cases. The point is, however, that the statute's primary focus is to devise a procedure for *equitably distributing* "marital," as opposed to "separate," property *upon dissolution of the marriage*.

The primary focus of our common law rules is to determine beneficial ownership of property acquired during marriage by giving effect to what was intended at the time the property was acquired. What the payor intended at the time of acquisition is controlling, no matter the context in which the dispute arises. The common law rules are designed to resolve not only property disputes between spouses upon dissolution of marriage but also disputes involving, for example, the heirs of a deceased spouse whose marriage was intact at death, *see Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222 (1957), and *Shotwell v. Stickle*, 83 N.J. Eq. 188, 90 A. 246 (1914), or creditors of a living spouse whose marriage remains intact, *see Thurber v. LaRoque, supra*, 105 N.C. 301, 11 S.E. 460. The Equitable Distribution Act is designed, on the other hand, to divide property equitably, based upon the relative positions of the parties at the time of divorce, rather than on what they may have intended when the property was acquired. For purposes other than those controlled by statute we believe the presumptive gift rule, being more in accord with the probabilities of the marital state, is a better procedural device than the presumptive trust rule for ascertaining the truth.

In making this change in our common law, we are cognizant of the policy of this Court, "in matters involving title to property . . . to leave changes in the law to the legislature." *Rabon v.*

*Hospital*, 269 N.C. 1, 20, 152 S.E. 2d 485, 498 (1967); *see also Whetsell v. Jernigan*, 291 N.C. 128, 229 S.E. 2d 183 (1976). We also recognize that although the Court "has never overruled its decisions lightly," 269 N.C. at 20, 152 S.E. 2d at 498, "[a]bsent a legislative declaration, this Court possesses the authority to alter judicially created common law when it deems it necessary in light of experience and reason." *State v. Freeman*, 302 N.C. 591, 594, 276 S.E. 2d 450, 452 (1981); *see also State v. Alford*, 274 N.C. 125, 161 S.E. 2d 575 (1968). Thus, from time to time when this Court has been convinced that changes in the way society or some of its institutions functioned demanded a change in the law, it rejected older rules which the Court itself developed in order that justice under the law might be better achieved. These decisions were sometimes made in the face of arguments that such changes ought to be made, if at all, by the legislature. *See, e.g., Nicholson v. Hospital, supra*, 300 N.C. 295, 266 S.E. 2d 818 (overruled decisions barring action for loss of consortium on the ground, among others, that these decisions contradicted "the policy of modern law to expand liability in an effort to afford decent compensation . . . to those injured by the wrongful conduct of others"); *Insurance Co. v. Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769 (1981) (rejected this Court's earlier "strict contractual approach" in applying notice-to-insurer requirements of insurance contracts in favor of the "reasonable expectation of the parties approach," in recognition of the fact that the terms of insurance contracts are not truly negotiated, or bargained for, like private contracts); *Rabon v. Hospital, supra* (abolished charitable immunity for public hospitals on the ground, among others, that such hospitals are no longer, in fact, charitable institutions); *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976) (abolished sovereign immunity in contract actions against state on grounds, among others, of public's heightened expectations that government be "responsive and responsible" and because legislature had already consented for the state to be sued in "many important contractual situations"). In *Pendergrast v. Aiken*, 293 N.C. 201, 211-13, 236 S.E. 2d 787, 793-94 (1977), this Court adopted for the first time the reasonable use doctrine for resolving conflicts over property damage caused by surface water drainage after acknowledging (1) our "increasing industrialization and urbanization," (2) that "in a changing society dogmatic adherence to [our traditional civil law rule] is unfeasible and unwise," and (3) this Court's earlier will-

ingness to "modify that rule where time and circumstance so require."

We have already alluded to the ongoing march of the law to place men and women generally and husbands and wives particularly on an equal legal footing. This march in North Carolina, as evidenced by the statutes to which we have already referred, has really been led by our legislature. Because of this unmistakable legislative policy that there be no difference in treatment of husbands and wives in our courts based solely on gender, we believe we are justified in altering our own rules regarding spousal real estate transactions so that the same rule applies to both spouses, despite our long-standing policy to leave changes in the law involving property titles to the legislature. To do so simply keeps us in step with the policy making branch of our government.

## III

[2] Having concluded that plaintiff in order to prevail must rebut the presumption that he made a gift to defendant of an entirety interest in the real property, we now consider whether the evidentiary forecast on the summary judgment motion shows as a matter of law that plaintiff will not at trial be able to rebut the presumption. We conclude that it does not. Rather, the evidentiary forecast indicates that plaintiff may at trial be able to rebut the presumption and make out a *prima facie* case for a resulting trust in his favor.

A defendant is entitled to summary judgment only if he can produce a forecast of evidence which, when viewed most favorably to plaintiff, would, "if offered by plaintiff at the trial, without more, . . . compel a directed verdict" in defendant's favor. *Moore v. Fieldcrest Mills, Inc.,* 296 N.C. 467, 473, 251 S.E. 2d 419, 423 (1979). In other words, if the forecast of evidence available for trial, as adduced on the motion for summary judgment, demonstrates that plaintiff will not at trial be able to make out at least a *prima facie* case, defendant is entitled to summary judgment. *Dickens v. Puryear,* 302 N.C. 437, 276 S.E. 2d 325 (1981). In such cases there is no genuine issue of material fact. *Moore v. Fieldcrest Mills, Inc., supra.*

In order at trial to make out a *prima facie* case for a resulting trust plaintiff must rebut the presumption of gift by

evidence that he intended no gift. *Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222 (1957). "[T]he presumption is one of fact and not of law, and may be rebutted by evidence of circumstances tending to show a contrary intent or that the purchaser did not intend the ostensible grantee . . . to take beneficially." *Creech v. Creech*, 222 N.C. 656, 662, 24 S.E. 2d 642, 646 (1943). Plaintiff's evidence must be "clear, cogent, and convincing." *Bass v. Bass*, *supra*, 229 N.C. at 173, 48 S.E. 2d at 49. "However, it is to be kept in mind that it is not the function of the presiding judge to apply this rule in the sense of passing upon the intensity of the proofs. That is a matter solely within the province of the jury." *Bowen v. Darden*, 241 N.C. 11, 14, 84 S.E. 2d 289, 292 (1954).

"[A] resulting trust arises, if at all, in the same transaction in which legal title passes, and by virtue of consideration advanced before or at the time legal title passes, and not from consideration thereafter paid." *Bryant v. Kelly*, 279 N.C. 123, 129, 181 S.E. 2d 438, 441 (1971), quoting *Rhodes v. Raxter*, 242 N.C. 206, 87 S.E. 2d 265 (1955); *cf. Cline v. Cline*, *supra*, 297 N.C. 336, 255 S.E. 2d 399. It is undisputed that plaintiff furnished from his separate funds the entire consideration for the real property before or at the time title passed. The only factual issue, therefore, is plaintiff's intent at the time he furnished the consideration. This Court said in *Waddell v. Carson*, *supra*, 245 N.C. at 674, 97 S.E. 2d at 226:

"'[A] resulting trust does not arise where a purchaser pays the purchase price of property and takes the title to it in the name of another unless it can be reasonably presumed from the attending circumstances that the parties intend to create the trust at the time of the acquisition of the property.' *Lawrence v. Heavner*, *supra*. In the final analysis, whether or not a resulting trust arises in favor of the person paying the consideration for a transfer of property to another, depends on the intention, at the time of transfer, of the person furnishing the consideration, and such intention is to be determined from all the attendant facts and circumstances. 89 C.J.S., Trusts, p. 966. See 89 C.J.S., Trusts, Sec. 133, as to admissibility of evidence to establish a resulting trust."

If, therefore, plaintiff can prove at trial by clear, cogent, and convincing evidence that he did not intend to make a gift of an

entirety interest in the property to defendant, then he will have rebutted the presumption of gift. "[W]hen this is done, the parties then stand as if they were not man and wife, that is, they stand as other parties, and the general rule prevails." *Bass v. Bass*, 229 N.C. 171, 172, 48 S.E. 2d 48, 49 (1948). When the presumption of gift is rebutted the effect is "automatically to create a resulting trust" in favor of the party furnishing the purchase price. Scott, § 443 at 3345; *accord*, Tiffany, *supra*, § 272 at 463.

To show his intent at the time of the transaction, plaintiff is entitled to rely on "all the attendant facts and circumstances" of the transaction. *Waddell v. Carson, supra*, 245 N.C. at 674, 97 S.E. 2d at 226. Thus plaintiff's intent may be shown by evidence "of facts and statements of the parties, which happened or were made contemporaneously with the purchase, [except] that the declarations of the trustee may be received in evidence, if made at any time, to establish the trust." *Wise v. Raynor*, 200 N.C. 567, 570, 157 S.E. 853, 855 (1931), *quoting* 26 R.C.L. 1230 (1920); *Williams v. Honeycutt*, 176 N.C. 102, 96 S.E. 730 (1918); 76 Am. Jur. 2d Trusts, § 632 (1975). Thus declarations of the party claiming a resulting trust made at or before, but not after, title passes are admissible. Bogert, *supra*, § 459 at 717-20. Admissions, however, of the grantee and the parties' conduct both before and after title passes are admissible to show the intent of the payor at the time the deed was made. Restatement (2d) Trusts, § 443, Comment 9 (1959); *see also Hinton v. Pritchard*, 107 N.C. 128, 12 S.E. 242 (1890). In summary, "[t]he proofs, except as to acts or declarations of the party to be charged, must be of facts antecedent to or contemporaneous with the purchase, or so immediately afterwards as to form a part of the res gestae." *Herbert v. Alvord*, 75 N.J. Eq. 428, 429-30, 72 A. 946, 947 (1909).[10]

*Shotwell v. Stickle, supra*, 83 N.J. Eq. 188, 90 A. 246, is instructive. There John A. Stickle and Martha Stickle were hus-

---

10. In North Carolina except in cases of fraud, mistake or undue influence, a trust may not be shown by parol evidence in favor of the grantor in a deed conveying absolute title to the grantee. *Tire Co. v. Lester*, 192 N.C. 642, 135 S.E. 778 (1926). However, in cases in which the grantee takes title and holds for someone other than the grantor, the trust whether resulting or express, may be established by parol evidence. *Wise v. Raynor*, 200 N.C. 567, 157 S.E. 853 (1931); *Shelton v. Shelton*, 58 N.C. [5 Jones Eq.] 292 (1859); 76 Am. Jur. 2d Trusts, §§ 194 & 629 (1975). *Accord, Bryant v. Kelly, supra*, 279 N.C. 123, 181 S.E. 2d 438.

band and wife. During their marriage John's father, Isaac, died testate naming John as one of his executors. John agreed with his two brothers that he would purchase land from Isaac's estate. Being advised, however, that he could not take title in his own name because he was an executor of the estate, John had title to the property made to his wife, Martha; but John furnished the entire purchase price. Martha later died and her heirs brought the action against John to partition the property. The Court held that evidence of the reason why title to the property was placed in Martha's name together with evidence that Martha at the time the deed was delivered and thereafter made statements that she intended to deed the farm to her husband and would eventually do so when it became convenient, was enough to rebut the presumption of gift and create a resulting trust in John's favor.

In light of these principles, the evidentiary forecast on summary judgment indicates that plaintiff will be able to rebut the presumption of gift and make out, at trial, a *prima facie* case for a resulting trust in his favor. It shows that plaintiff supplied the entire purchase price for the property from money he received from his father and grandfather. He at all times intended for the property to be his alone and so advised the defendant at and before the closing. Defendant "agreed with me that this real estate was mine and mine alone." Plaintiff acquiesced in placing title in both his and defendant's names only because he was advised by his real estate agent that North Carolina law so required.

### IV

[3] Plaintiff is not precluded from relying on a resulting trust because of deficiencies in his complaint. Although plaintiff does not expressly refer to a resulting trust in his complaint, and prays for reformation of the deed on the ground of mutual mistake, he has pled sufficient facts to state a claim giving rise to a resulting trust.

Plaintiff alleged in his complaint that before the closing "plaintiff told the defendant that he would be furnishing all of the consideration for the purchase of this realty, that he was therefore buying it in his own right as his sole and individual property, and that it would be his and his alone." At the closing, "plaintiff again told the defendant and others that he was furnishing the consideration for the purchase of this realty, and that

he alone would own the realty." Plaintiff further alleges that "[t]hese declarations and statements made by the plaintiff were agreed upon by the defendant" and that he, in fact, paid all of the purchase price. The deed was made to both parties as grantees "[b]y mutual mistake." When shown the deed at the closing, plaintiff again told everyone present "including the defendant, that he was furnishing the consideration for the purchase of the realty, that it was to be owned by him individually, and his and his alone" and that the defendant "agreed to these declarations and representations by the plaintiff." Since the closing, plaintiff has continued to assert his sole ownership of the property in the presence of defendant and others and at these times "defendant agreed with the plaintiff." Plaintiff prays for the Court to reform the deed on the ground of mutual mistake and for a declaratory judgment that he is sole owner of the property.

Although plaintiff has denominated his claim as one based on mutual mistake, no recovery may be had on that theory. Both plaintiff and defendant understood that the deed would in fact be made to both parties as husband and wife both before and at the time of the closing. The only mistake supported by the evidence is plaintiff's erroneous understanding of North Carolina law governing deeds and perhaps his misunderstanding of the legal effect of having the deed made to both him and his wife as grantees.

"[M]ere ignorance of law, unless there be some fraud or circumvention, is not a ground for relief in equity whereby to *set aside* conveyances or avoid the legal effect of acts which have been done." *Foulkes v. Foulkes*, 55 N.C. (2 Jones) 260, 263 (1855) (Emphasis original). In *Wright v. McMullan*, 249 N.C. 591, 107 S.E. 2d 98 (1959), plaintiff brought a declaratory judgment action to determine the ownership of certain Series "E" United States Savings Bonds. Plaintiff had caused the bonds to be registered respectively in the names of his two sons both of whom predeceased plaintiff. Plaintiff had maintained exclusive possession of the bonds and alleged that he had not intended to vest title to the bonds in his sons. Plaintiff claimed ownership of the bonds. Summary judgment for defendant was affirmed on appeal. This Court noted that the law applicable to the bonds provided that ownership was fixed in the name of the person to whom the bonds were registered. The Court said that plaintiff's "mistake as

to the legal consequences flowing from his deliberate and intentional act cannot destroy the force and effect of the law." 249 N.C. at 595, 107 S.E. 2d at 101.

The parties' mistake as to the legal consequences of naming them both as grantees, or as to the legal necessity for doing so assuming that plaintiff's evidence of such a mistake is believed, is not the kind of mistake for which reformation of the instrument may be granted. Both parties deliberately and intentionally approved the form of the deed. There is no suggestion in the evidence that plaintiff's approval was due to any fraud or circumvention on the part of the defendant. *Cf. Lawrence v. Heavner*, 232 N.C. 557, 560, 61 S.E. 2d 697, 699 (1950) (plaintiff entitled to reformation of a deed if "because of a mistake on his part super-induced by fraud on [his purported wife's] part," both parties were named as grantees in a deed).

Plaintiff's incorrect choice of legal theory, however, is not fatal to his claim because even in the context of a motion to dismiss for failure to state a claim, "when the allegations in the complaint give sufficient notice of the wrong complained of an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory." *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E. 2d 611, 625 (1979). Here, of course, we are dealing with a motion for summary judgment at which a forecast of the evidence available for trial has been presented. In this context, particularly, "the nature of the action is not determined by what either party calls it." *Dickens v. Puryear*, 302 N.C. 437, 454, 276 S.E. 2d 325, 336 (1981), *quoting Hayes v. Ricard*, 244 N.C. 313, 320, 93 S.E. 2d 540, 545-46 (1956). At summary judgment the nature of the action is determined not only by the pleadings and the nature of the relief sought, but also by the facts "which, on motion for summary judgment, are forecast by the evidentiary showing." *Dickens v. Puryear*, 302 N.C. at 454, 276 S.E. 2d at 336. As already set forth, plaintiff has presented a sufficient evidentiary showing to allow him at trial to prove that defendant holds on resulting trust for him.

V

Finally, plaintiff's claim is not barred by laches. Plaintiff remained in possession of the contested property from the original

purchase until the time suit was brought. For laches to bar his claim "there must be something on his part which looks like an abandonment of the right, or an acquiescence in its enjoyment by another, inconsistent with his own claim or demand." *Stith v. McKee*, 87 N.C. 389, 392 (1882). No such abandonment appears here.

For the reasons stated, the decision of the Court of Appeals upholding summary judgment for defendant is

Reversed.