Mims v. Mims

---

---

ALLEN L. MIMS, JR. v. MARSHA P. MIMS

No. 8210SC1126

(Filed 3 January 1984)

**Husband and Wife § 14; Trusts § 13.4— conveyance to husband and wife—payment by husband—rebutting presumption of gift to wife**

> Plaintiff husband presented sufficient evidence to rebut the presumption of a gift to defendant wife of an entirety interest in property to which title was taken in the names of both spouses so as to entitle plaintiff to a resulting trust in the property where plaintiff presented evidence that he paid the entire consideration for the property, a house and lot, with his separate funds received from a family inheritance; the names of both spouses appeared on the deed only because plaintiff's real estate agent advised plaintiff at the closing that North Carolina law so required; between the time of the offer to purchase and the closing, plaintiff told various persons that he was paying for the house with his own funds and that it was to be his house; it was plaintiff's intention at all times to own the property individually; and plaintiff did not intend to make a gift to defendant. The fact that plaintiff proceeded with the closing and accepted a deed in the names of both parties did not show that plaintiff abandoned his original intention to own the property individually.

APPEAL by plaintiff from *Brewer, Judge.* Judgment entered 28 September 1982. Heard in the Court of Appeals 21 September 1983.

Upon remand from the North Carolina Supreme Court decision in *Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982), the trial court, sitting without a jury, made findings of fact and conclusions

of law and entered judgment in favor of the defendant, Marsha P. Mims and against the plaintiff, Allen J. Mims, Jr. on his claim for sole beneficial ownership of the parties' marital home, the payment for which was furnished entirely by the plaintiff husband, with title taken in the names of both parties as husband and wife. The trial court declared that the parties, now divorced, hold the property as tenants in common. Plaintiff appeals from the denials of his motions for judgment notwithstanding the verdict and for a new trial on the grounds that the verdict of gift is not supported by the weight of the evidence.

*McDaniel, Heidgerd & Schiller, by L. Bruce McDaniel, for plaintiff appellant.*

*Sullivan & Pearson, P.A., by Mark E. Sullivan, for defendant appellee.*

JOHNSON, Judge.

This appeal involves the attempt of plaintiff Allen Mims to establish sole ownership of certain real property by means of a resulting trust in his favor. Plaintiff presents three questions for review, all raising the common issue of whether the facts of record support the judgment entered. Specifically, whether plaintiff produced sufficient evidence of his intention to retain sole ownership of the property to rebut the presumption that he intended to make a gift of an entirety interest to his former wife, Marsha Mims, to mandate the declaration of a resulting trust in his favor. Plaintiff argues that he presented "overwhelming relevant, material and unrefuted evidence" to prove that he took no actions supporting a finding of gift, that he did not intend to make such a gift, and did not, in fact, make a gift of the property to the defendant. Consequently, plaintiff argues that the trial court erred in making certain findings of fact, in failing to make certain other findings, and abused its discretion by denying plaintiff's motions to set aside the verdict. For the reasons set forth below, we hold that the relevant and material facts of record do not support the trial court's conclusion of law that the presumption of gift was not rebutted, and therefore, the judgment awarding defendant a one-half interest in the subject property must be reversed. We will first give a brief review of the history of this case, as it has some bearing on the resolution of the issues presented by this appeal.

I

Plaintiff and defendant were married in 1973, separated in 1977, and divorced in 1978. In 1974, the plaintiff purchased a residential house and lot, title being taken in both names. It was undisputed that he paid the entire consideration from his separate funds. Plaintiff originally filed this action seeking reformation of the deed based on a mutual mistake and a judgment declaring him the sole owner of the property. He alleged, *inter alia*, that it had always been the intention and the understanding of the parties that the property was to be his alone and that both names appeared on the deed only because their real estate agent had erroneously advised them that North Carolina law so required. Defendant opposed reformation of the deed conveying the property to both parties as tenants by the entirety, and her motion for summary judgment was granted. On appeal plaintiff argued, *inter alia*, that although it was not mentioned specifically in the pleadings, the evidentiary showing on the summary judgment motion was sufficient to vest beneficial title in him alone on a theory of resulting trust.

Ultimately, the case reached the Supreme Court. The court upheld summary judgment for the defendant wife on the grounds that the mistake was one of law, not fact, and therefore reformation of the deed on the basis of mutual mistake was not supported by the evidentiary showing as a matter of law. *Mims v. Mims, supra,* 305 N.C. at 45, 286 S.E. 2d at 783 (hereafter *"Mims"*). However, the court also held that the evidentiary forecast on summary judgment indicated that the plaintiff would be able to rebut the presumption of gift arising when a husband purchases real property and title is taken in the names of both spouses jointly, and make out a *prima facie* case for a resulting trust in his favor at trial. 305 N.C. 59, 286 S.E. 2d at 791.

In the course of its opinion on the issue of resulting trust, the court examined prior North Carolina law controlling the presumption of resulting trust in interspousal conveyances when the wife provided the consideration and the contrary presumption of gift when it was the husband who furnished the consideration. In what is now considered a landmark decision, the Court in *Mims* concluded that the original rationale for employing different presumptions for husbands and wives is no longer viable, and

held that the presumptions should be equalized and a gift implied whether the husband or the wife provided the consideration. 305 N.C. at 48, 286 S.E. 2d at 788. The presumptive gift rule was made applicable to all cases not governed by the Equitable Distribution Act. However, that aspect of *Mims* is not involved in this appeal because it was the plaintiff husband who furnished the consideration in this case.

In the course of reviewing the sufficiency of plaintiff's evidentiary forecast, the court outlined the general rules governing his claim for a resulting trust. These general rules are also determinative of the case *sub judice* and may be summarized as follows:[1]

> 1. A resulting trust arises when a person becomes invested with title to real property under circumstances which in equity obligate that person to hold the title and to exercise ownership for the benefit of another. A trust of this sort does not arise from or depend upon any agreement between the parties; it results from the fact that one person's money has been invested in land and the conveyance taken in the name of another. The trust is created in order to effectuate what the law presumes to have been the intention of the parties in these circumstances—that the person in whom the land was conveyed holds it as trustee for the person who supplied the purchase money.
>
> 2. At common law the rule is subject to the qualification that where the person who pays the price is under a legal, or even, a moral obligation to maintain the person in whose name the purchase is made, there is a presumption in equity that the purchase is intended as an advance or gift to the recipient.
>
> 3. To make out a *prima facie* case for a resulting trust plaintiff must rebut the presumption of gift by evidence that he intended *no gift*.
>
> 4. The presumption is one of fact and not of law, and may be rebutted by evidence of circumstances tending to show a con-

---

1. Citations to the relevant authorities relied upon by the Supreme Court in *Mims* may be found at 305 N.C. 46-47, 56-58, 286 S.E. 2d at 783-784, 789-790.

trary intent or that the purchaser did not intend the osten-sible grantee to take beneficially.

5. A resulting trust arises, if at all, in the same transaction in which legal title passes, and by virtue of consideration advanced before or at the time legal title passes.

6. In the final analysis, whether or not a resulting trust arises in favor of the person paying the consideration for a transfer of property to another depends on the intention, at the time of transfer, of the person furnishing the consideration, and such intention is to be determined from all the attendant facts and circumstances.

7. When a party proves by clear, cogent, and convincing evidence that he or she did not intend to make a gift of an entirety interest in the property to his or her spouse, the presumption of gift will have been rebutted. The parties will then stand as if they were not man and wife, that is, they stand as other parties and the general rule prevails.

8. When the presumption of gift is rebutted the effect is automatically to create a resulting trust in favor of the party furnishing the purchase price.

The court stated that it was undisputed that plaintiff furnished from his separate funds the entire consideration for the real property before or at the time title passed, and concluded that "[t]he only factual issue, therefore, is plaintiff's intent at the time he furnished the consideration." 305 N.C. at 57, 286 S.E. 2d at 790. The court continued, "[i]f, therefore, plaintiff can prove at trial by clear, cogent, and convincing evidence that he did not intend to make a gift of an entirety interest in the property to defendant, then he will have rebutted the presumption of gift." Id. at 57-58, 286 S.E. 2d at 790.

The court also summarized the evidentiary forecast established by the parties' pleadings, affidavits and documentary evidence as follows:

It shows that plaintiff supplied the entire purchase price for the property from money he received from his father and grandfather. He at all times intended for the property to be his alone and so advised the defendant at and before the clos-

ing. Defendant "agreed with me that this real estate was mine and mine alone." Plaintiff acquiesced in placing title in both his and defendant's names only because he was advised by his real estate agent that North Carolina law so required.

305 N.C. at 59, 286 S.E. 2d at 791. On the basis of this forecast,[2] the case was remanded to the Superior Court.

II

Upon remand to the trial court, the parties waived a jury trial. The only factual issue to be determined was the plaintiff's intent at the time he furnished the consideration for the property, that is, at the time of the closing on 12 December 1974. Plaintiff presented the testimony of several witnesses, including himself, his father and several friends of his and his wife. The only witness testifying for the defense was defendant Marsha Mims.

On the whole, the evidence presented by plaintiff was consistent with the evidentiary forecast he presented in opposition to defendant's summary judgment motion. Defendant's own testimony conflicted with plaintiff's account of conversations between the parties prior to the closing with regard to plaintiff having discussed with defendant the realtor Richard Smith's statement regarding the necessity for title being taken in both names, with regard to plaintiff's having advised defendant that he intended the property to be his alone, and with regard to defendant's having agreed with plaintiff that the real estate was to be his alone. However, plaintiff's father and friends, Paul Simpson and Danford Josey, all testified that at the relevant times, plaintiff had stated in their presence that the house was to be his alone and further, that they had never heard plaintiff state that he was making a gift of the property to Mrs. Mims or Mrs. Mims claim that such a gift was being made to her.

Both realtors involved with the transaction testified. Richard Smith was then employed as an agent with the real estate company of James Stephenson. Smith was the realtor who showed the subject property to plaintiff and who was present when the parties signed the offer to purchase on 16 November 1974.

2. A more complete synopsis of the contents of the plaintiff's and defendant's deposition testimony is contained in *Mims*, 305 N.C. at 43-45, 286 S.E. 2d at 782-783.

Stephenson was the realtor who was present at the closing on 12 December 1974. Smith testified that, "Allen asked me sometime before title was made, can I put this in my name, the house in my name; and my answer was no." He would not recall any further conversations on that issue with the plaintiff. However, he never heard the plaintiff state that he was making a gift of the property to his wife. Stephenson testified that although he was present at the closing, he could not recall having heard plaintiff raise the question about how the property was to be titled.

Plaintiff, in both his deposition and testimony at trial, had testified that he raised the question of title with the realtors twice, first at the time the offer was signed and again at the closing when he gave his personal check for $69,000 to pay for the house. On direct examination, plaintiff testified that Smith presented the written offer to purchase to plaintiff for · his signature. The writing recited that the deed was to be made to Mr. and Mrs. Mims. Plaintiff asked Smith why it had to be in both people's names. The following exchange occurred:

Q. What did he say?

A. He said that's the way it was in North Carolina.

Q. And as a result of that, what did you do about that particular inclusion at that time?

A. Well, I figured he knew what he was talking about. He was a realtor and sold a lot of houses. I took it as his word that that is the way it had to be.

As to the closing, plaintiff testified that he said to the realtor, "are you sure this has to be titled in both people's names and he said yes in North Carolina you have to do it like that . . . I took it that he knew what he was talking about and I told him, I said, well its my personal check. It's a lot of money and he said well come on let's sit down . . . and we went on and closed the house."

The only aspect in which plaintiff's evidence substantially differed from his evidentiary forecast concerned whether plaintiff inquired as to the form of the title once or twice. The only substantial conflict in the parties' evidence went to the issue of whether defendant agreed with plaintiff that the house was to be solely owned by him. At the close of all the evidence, plaintiff

moved for a directed verdict pursuant to G.S. 1A-1, Rule 50, and the motion was denied.

On 28 September 1982, the trial court entered a judgment in favor of defendant, concluding that plaintiff had failed to present clear, cogent and convincing evidence sufficient to rebut the presumption that he did not intend to make a gift of an entirety interest to defendant, and declaring the parties to hold the subject property by tenancy in common. The trial court's relevant findings of fact may be summarized as follows:

1. Prior to 16 November 1974, the parties lived in an apartment and were investigating several parcels of real estate for a home.

2. Both parties signed the offer to purchase on the subject property. The offer recited that the deed was to be made in the names of Allen J. Mims, Jr. and wife, Marsha P. Mims. At the time of the closing, plaintiff accepted the deed in the name of the parties as husband and wife.

3. The source for the lump sum cash payment for the purchase was a separate family inheritance of plaintiff's and plaintiff paid all of the purchase price and closing costs of the subject property.

4. Plaintiff asked the realtor, Richard Smith, prior to signing the offer to purchase, why the offer recited that the deed was to be made to both parties as husband and wife and was told by Smith that a deed in that form was required in North Carolina.

5. Defendant was unaware of plaintiff's conversation with the realtor and did not know of the desires he expressed or agree to them.

The trial court also made the following pertinent findings of fact as to plaintiff's intention regarding ownership:

11. At the time of the offer to purchase and at all times thereafter until the closing, plaintiff expressed a desire to own the subject property individually to several persons. These included his father, a lifelong friend, and a fraternity brother. These statements were outside the presence of plaintiff.

17. Prior to the closing plaintiff wished to own the property individually. However, believing that such individual owner-ship was not possible in North Carolina, plaintiff consciously and intentionally chose to proceed with the completion of the purchase.

Based upon its findings of fact, the trial court made the following conclusion of law:

2. Plaintiff's actions in proceeding with the closing, when he realized that such action would have the legal effect of creating an equal joint ownership with the defendant, not-withstanding his desire to own the property separately and individually, does not rebut by clear, cogent and convincing evidence the presumption of an intent on the part of plaintiff to make a gift of one-half joint ownership of the subject prop-erty to defendant.

### III

Plaintiff has assigned error to certain inclusions and exclu-sions from the trial court's findings of fact, to the conclusions of law drawn therefrom, and to the denial of his motions to set aside the verdict as contrary to the weight of the evidence, and for a new trial. The question of the sufficiency of the evidence to sup-port findings of fact made by the trial court is a proper subject for appellate review. *Distributing Corp. v. Schofield,* 44 N.C. App. 520, 261 S.E. 2d 688 (1980). When, as in the present case, the par-ties waive a jury trial, findings of fact made by the court and sup-ported by competent evidence are conclusive, even though there is evidence in the record which would have supported contrary findings. *Rock v. Ballou,* 286 N.C. 99, 209 S.E. 2d 476 (1974). A judgment based upon such findings will not be disturbed on ap-peal, absent error of law appearing on the face of the record. *Wall v. Timberlake,* 272 N.C. 731, 158 S.E. 2d 780 (1968); *Distributing Corp. v. Schofield, supra.* Notwithstanding the. rule that an ap-pellate court is bound by findings of fact which are supported by competent evidence of record, it is not bound by the conclusions or inferences the trial court draws from them. *Heath v. Manufac-turing Co.,* 242 N.C. 215, 87 S.E. 2d 300 (1955). Upon appeal an ap-pellate court may look to the evidence in the record to interpret the findings of fact made by the trial judge. *Harrelson v. In-surance Co.,* 272 N.C. 603, 158 S.E. 2d 812 (1968). Where crucial

factual findings fail to support the trial court's conclusion of law, the judgment entered thereon is properly reversed. *Heath v. Manufacturing Co., supra.* In the case under discussion, the trial court correctly found that it had been plaintiff's intention at the time of the offer and at all times prior to the closing to own the property individually. However, from the judgment entered, it is evident that the trial court based its conclusions of law entirely on inferences drawn from the fact that plaintiff chose to proceed with the closing, knowing that both his name and the name of his wife appeared on the deed. We note here that were this always the dispositive fact in cases such as this, the doctrine of "resulting trust," which is premised on the theory that the state of title created by the deed itself is not reflective of the intention of the payor at the time of the purchase, would have no place in our legal system. The record discloses that upon the facts of this case, the trial court erred in inferring, as it evidently did, that plaintiff ever abandoned his "desire" or "wish" to own the property individually, and therefore erred in concluding that plaintiff failed to rebut the presumption that he made a gift of the property interest to defendant.

To begin with, the only substantial conflict in the parties' evidence went to the issue of whether defendant *agreed* with plaintiff that the house was to be owned by him individually. In *Mims*, the Supreme Court reiterated the long standing rule that a resulting trust does not arise from or depend upon any agreement between the parties, but rather, arises from the fact that one person's money has been invested in land and the conveyance taken in the name of another. 305 N.C. at 46, 286 S.E. 2d at 783. *See also Teachey v. Gurley*, 214 N.C. 288, 199 S.E. 83 (1938). It must be remembered that, "[a] resulting trust is a creature of equity, and arises by implication or operation of law to carry out the presumed intention of the parties, that he who furnishes the consideration for the purchase of land, intends the purchase for his own benefit . . ." *Waddell v. Carson*, 245 N.C. 669, 674, 97 S.E. 2d 222, 226 (1957). Although it is evident that the Supreme Court found plaintiff's allegations regarding defendant's acquiescence in his sole ownership significant for the purpose of overcoming defendant's motion for summary judgment, plaintiff's failure to carry his burden of proof to establish that subsidiary fact is not dispositive on the issue of his intent at the time of the purchase.

On that issue, plaintiff's evidence was sufficient to rebut the gift presumption.

Plaintiff testified that he wanted to move from the apartment the parties lived in because of noisy neighbors and the desire to be closer to his work; that he like the realty in question, showed it to defendant, his friends and his father, and that consequently, "I made an offer on it, November 16, 1974"; that when he saw that both names were to be on the deed, he asked why it had to be in both names, was told that North Carolina law so required and just accepted that as a fact; that his intention at the time the offer was signed was that this was to be his house and he did not intend to make a gift to defendant.

Further, that between the time of the offer and the closing, he told various persons that he was paying for the house by cash, out of his own funds, and as far as he was concerned, it was his house. Specifically that, "it was mine," and that no gift to defendant was intended. Rather he stated that:

> I tried to make it plain to her then that it was my money that my grandfather left me and it was mine. It was just like when I gave her my mother's diamond ring as an engagement ring to wear. I made the same agreement with her then that it was hers to wear but if anything ever happened it was the only thing I had left of my mother's and I wanted to keep it and she agreed.

Plaintiff testified that the lump sum cash payment came from money that he had inherited from his grandfather and father and that he chose that form of payment for the house as a good investment for his inheritance.

Plaintiff's testimony regarding the facts and circumstances of the closing on 12 December 1974 was consistent with his testimony concerning the preceding time period; that he was still concerned about both names appearing on the deed; that it remained his intention that he was buying the house and it was to be his; and that he never expressed a contrary intention to defendant or anyone else.

As to events after the purchase of the property, plaintiff testified that defendant voluntarily left the marital home in June, 1977. He and defendant subsequently discussed splitting up their

personal property but he never heard defendant claim an interest in the house prior to December, 1977. On cross-examination, plaintiff testified that he had never instituted suit to determine title to the property prior to this action in 1977 because, "As far as I was concerned Marsha and I had an understanding. There was no need to. I didn't know that it didn't have to be in both people's names until this lawsuit."

Most of plaintiff's evidence, his own testimony as well as that of his witnesses, consists of his statements to the effect that he was buying the house for his own benefit. Declarations to this effect, made before or at the time of the delivery of the deed, are considered "excellent evidence to rebut a presumption of a gift to the wife." Bogert, The Law of Trusts and Trustees, § 459, p. 718 (2d ed. rev. 1977).

The trial court made two findings of fact reflective of the foregoing evidence, that at all times prior to the closing plaintiff "wished" to own the property individually and "expressed a desire" to own the property individually to several persons, but failed to draw the proper inferences from these findings. The unmistakable thrust of these findings is that plaintiff intended to own the property individually. As the court in *Mims* observed, the presumption of gift is one of fact and not of law, and may be rebutted by evidence tending to show a contrary intent or that the purchaser did not intend the ostensible grantee to take beneficially. *See also Creech v. Creech*, 222 N.C. 656, 24 S.E. 2d 642 (1943). The plaintiff's testimony regarding his attitude toward property that he inherited, and toward ownership of property purchased with his separate funds, together with the trial court's findings of a contrary intent on the part of plaintiff to own the property individually, are inconsistent with the conclusion of law that plaintiff failed to rebut the presumption of gift. Too much weight was given to the bare presumption itself. Professor Scott, in his treatise on trusts, has discussed the dangers of undue reliance upon the presumption alone.

> The question of gift of trust is one of intention, and human nature is such that it is difficult to ascertain intention by applying definite rules. So much depends not upon the formal relationship between the parties but upon their attitudes to each other. It is true that the rules adopted by the courts

with respect to the various relationships do not necessarily determine the final result, since they lay down presumptions which may be rebutted by further evidence. The presumptions, however, are given undue weight. Indeed, in some decisions it has been stated that they can be rebutted only by very strong, clear or even conclusive or indubitable evidence. Such a rule clearly gives too great weight to the relationship between the parties. The question is really one of intention as shown by all the circumstances. The notion that intention can be determined by the application of hard and fast rules of law is common in primitive systems of law, but it tends to disappear as courts and lawyers become more sophisticated.

5 Scott on Trusts, § 442, p. 3340 (3d ed. 1967).

Furthermore, no finding to the effect that plaintiff had *ever* abandoned his intent to own the property individually was made, nor would the evidence have supported such a finding. Evidently the trial court inferred from the fact that plaintiff proceeded with the closing and accepted the deed in both parties' names, that he had abandoned his original intention at the actual moment of the closing. Such a conclusion completely overlooks the reason why title to the property was placed in both names, and the significance of the plaintiff's mistaken belief as to the legal necessity for doing so.

On this issue, the *Mims* court cited *Shotwell v. Stickle*, 83 N.J. Eq. 188, 90 A. 246 (1914) with approval. In *Shotwell* the husband furnished the entire purchase price for an estate, but, being advised that he could not take title in his own name, had title to the property made to his wife. The court in *Shotwell* held that evidence of the *reason why* title to the property was placed in his wife's name, together with evidence tending to show the ostensible grantee's awareness that she held the property for her husband was enough to rebut the presumption of gift and create a resulting trust in the husband's favor. In *Waddell v. Carson, supra,* the husband's evidence that he furnished the entire consideration for the purchase of property with the real intention that title be taken in both parties names and that a mistake or inadvertence was the cause of the omission of his own name from the deed was held sufficient to rebut the presumption of gift and make a *prima facie* case for a resulting trust in his favor. *See also*

*Roberson v. Roberson*, 261 Ala. 371, 74 So. 2d 445 (1954) (presumption of gift rebutted by evidence that husband alone furnished the consideration and the names of the payor husband and his wife both appeared on the deed only because the seller, believing it necessary, mistakenly instructed his lawyer to so prepare the deed).

Therefore, although plaintiff's mistake as to the legal consequences of naming them both as grantees, or as to the legal necessity for doing so, could not serve as a basis for reformation of the deed, the *Mims* court was clearly of the opinion that it could properly serve as evidence tending to *rebut* the presumption that Marsha Mims' name appeared on the deed because Allen Mims intended thereby to make a gift of an entirety interest to her. It is apparent that the trial court failed to properly assess the significance of the mistake in this case. Furthermore, there was no evidence of record to support the trial court's findings of fact that plaintiff realized that the act of having the deed made to both parties as husband and wife would create joint ownership of the property. Plaintiff was never asked, on either direct or cross-examination, to state his understanding of the legal consequences of the deed's bearing the names of both parties as grantees. Although it is impossible to determine with any certainty exactly what plaintiff realized about his action in proceeding with the closing, all of the circumstantial evidence points to the conclusion that defendant's name appeared on the deed as the result of a mistake and was there contrary to the true intention of the plaintiff.

This erroneous finding as to what plaintiff realized to be the consequences of proceeding with the closing, in part, formed the basis of the trial court's conclusion that plaintiff failed to rebut the gift presumption. This conclusion would leave plaintiff in the untenable position of, having been told that a joint deed to husband and wife was required by North Carolina law, either remaining an apartment renter or making a forced gift to his wife by virtue of having chosen home ownership, regardless of his true intention. Such a result is not mandated by the law governing interspousal conveyances. The record in this case discloses that plaintiff presented sufficiently clear, cogent and convincing evidence to rebut the presumption of a gift to defendant to war-

rant the declaration of a resulting trust in his favor. Therefore, the judgment of the trial court must be reversed, and the matter remanded for entry of findings of fact, conclusions of law and judgment consistent with this opinion.

Reversed and remanded.

Judges BECTON and BRASWELL concur.