DILLINGHAM v. DILLINGHAM

[202 N.C. App. 196 (2010)]

———————————

JUDY METCALF DILLINGHAM, Petitioner v. CLARENCE DAVID DILLINGHAM, Respondent

No. COA09-507

(Filed 2 February 2010)

**Trusts— resulting trust—real property**

Although the trial court did not err by holding that petitioner's interest in the Equipment Barn property was held in a resulting trust, genuine issues of fact existed as to whether petitioner held the remaining seven properties in a resulting trust for respondent. The trial court's ruling to the contrary is reversed.

Appeal by respondent from order entered 7 November 2008 by Judge Dennis J. Winner in Buncombe County Superior Court. Heard in the Court of Appeals 26 October 2009.

---

DILLINGHAM v. DILLINGHAM

[202 N.C. App. 196 (2010)]

*Robert J. Deutsch, P.A., by Robert J. Deutsch and Tikkun A.S. Gottschalk, for petitioner-appellee.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Tobias S. Hampson, and Edward Eldred, and C. Gary Triggs, P.A., by C. Gary Triggs, for respondent-appellant.*

MARTIN, Chief Judge.

Judy Dillingham ("petitioner") and Clarence Dillingham ("respondent") were married on 31 December 1983. Prior to their marriage, on 30 December 1983, petitioner and respondent entered into a prenuptial agreement. As part of this agreement, both parties were allowed to "purchase, acquire, own, hold, possess, encumber, lease, dispose of, convey and deal in any and all classes and kinds of property, real, personal, or mixed, as though he or she were single and had never been married." The agreement also provided that "[n]othing contained in this Agreement shall be construed as preventing the parties from acquiring, owning, holding, selling and otherwise dealing in property . . . in their joint names . . . as tenants by the entirety."

On 23 July 1984, a son, David Drew Dillingham ("Drew"), was born of the marriage. Shortly thereafter, petitioner and respondent began to acquire various properties in Buncombe County, North Carolina, in order to put "back together the property that was Dillingham property." The first of these properties was a .78 acre lot ("Marital Home") which was conveyed to them by Lorene and Mabel Dillingham in 1986. That same year petitioner and respondent also acquired a 47.89 acre tract of land ("Foster Farm") from Vernice M. Gragg Foster and a 67.87 acre tract of land ("Dillingham Farm") from Lorene and Mabel Dillingham. In 1992, the parties acquired a .43 acre tract of land ("Fender Tract") from Josephine Gragg Fender and Fate Fender and a .92 acre tract of land ("Gragg Tract") from Rosa Lee Gragg. That same year, respondent deeded a 1.09 tract of land ("Equipment Barn"), which he owned prior to the marriage, to himself and petitioner as tenants by the entirety. In 1995, the parties acquired a one acre tract of land ("Randall Drive Property") from Doyle H. Frisbee, Jr. and Louise A. Frisbee. Finally, in 1996, respondent and petitioner acquired a 2.43 acre tract of land ("Rental Home") from respondent's father, C.B. Dillingham. All eight of these properties ("the properties") were deeded to petitioner and respondent as tenants by the entirety.

On 17 June 2004, petitioner and respondent separated. Following their separation, petitioner filed a complaint for, *inter alia*, post-separation support, alimony, writ of possession, attorney fees, equitable distribution, preliminary distribution, and injunctive relief. In respondent's answer, he asserted that the premarital agreement barred petitioner's claim, or, in the alternative, that he was entitled to equitable distribution. On 21 July 2005, a Consent Order: Post-Separation Support ("Consent Order") was filed, which acknowledged the validity of the parties' prenuptial agreement and awarded petitioner post-separation support and $1500 per month as an advance on her share of the marital estate. That same month, the parties were divorced. On 1 October 2007, petitioner filed a Motion to Dismiss Equitable Distribution Action ("Motion to Dismiss"), which was subsequently granted.

On 31 October 2007, petitioner filed a Petition for Partition of Real Property ("Partition Petition") in which she claimed that she was entitled to a partition in kind of the properties, which she then held as a tenant in common with respondent. On 26 November 2007, respondent filed an Answer to Petition for Partition, Affirmative Defenses, and Counterclaims ("Petition Answer"). In this Petition Answer, respondent asserted the equitable defenses of laches and estoppel. He also counterclaimed by requesting a declaratory judgment that he was the sole owner of the properties and a ruling that petitioner held the properties in a resulting or constructive trust for respondent. Respondent subsequently filed a Motion to Transfer the case to Buncombe County Superior Court, which was allowed on 11 January 2008.

Petitioner responded to respondent's Petition Answer by making a Motion to Strike Affirmative Defenses and a Motion to Dismiss Counterclaims. On 16 January 2008, respondent served an Amended Answer to Petition for Partition, Affirmative Defenses, and Counterclaims, alternatively, Motion to Amend Answer to Petition for Partition, Affirmative Defenses, and Counterclaims ("Amended Petition Answer"), and the following day he filed a Motion to Remand, and alternatively, Motion to Continue. The trial court subsequently denied petitioner's Motion to Strike Affirmative Defenses and Motion to Dismiss Counterclaims and respondent's Motion to Remand. The parties then conducted discovery.

Petitioner filed a Motion for Summary Judgment, which she later amended on 21 October 2008. In support of this motion, petitioner offered the pleadings, Respondent's Response to Petitioner's First Set

of Interrogatories and Request for Production of Documents ("Respondent's Response to Interrogatories"), Petitioner's First Request for Admissions to Respondent ("Request for Admissions"), deeds for the properties, the pre-trial depositions, petitioner's affidavit, and various documents from the parties' equitable distribution case. In her affidavit, petitioner swore that the parties intended for the properties to be deeded to the parties as tenants by the entirety and that she never agreed that respondent would be the sole owner. She also averred that the properties were purchased with either her personal funds or the parties' joint funds. In support of this contention, petitioner provided letters from Mabel and Lorene Dillingham gifting the down payment and first and second year mortgage payments on the Dillingham Farm to both respondent and petitioner. Petitioner also attached to her affidavit checks made out to mortgage companies from the parties' joint checking account as well as from her individual checking account.

In her deposition, petitioner reaffirmed the statements made in her affidavit by asserting that she too provided consideration for the properties. She also stated that the parties agreed that "[t]he Dillingham property that we got from [respondent's] aunts, that was going to go to Drew, had we stayed together as a couple," but otherwise the intention was for the properties to be titled in both parties' names. Contrary to petitioner's assertions, respondent stated in his deposition that he paid the full consideration for the Dillingham Farm, the Rental Home, the Fender Tract, and the Gragg Tract, either through services, inheritance, or his personal funds. He also stated it was the intent of the parties that the properties would "pass to [him], and ultimately be passed to [the parties'] son Drew."

Similar to respondent's assertion, Drew stated in his deposition that respondent told him numerous times that the properties had historically belonged to their family and that he eventually wanted them to go to Drew. Respondent's Response to Interrogatories also indicated that the parties entered into an agreement in 1985, which provided that the properties would "pass to [p]etitioner's and [r]espondent's only son and [r]espondent's only child, Drew Dillingham, with the intention of preserving the old Dillingham family farm legacy of a succession of properties that began in 1785."

Respondent filed his Reply to Amended Motion for Summary Judgment and Motion in Limine ("Summary Judgment Reply") on 31 October 2008. To support his contention that a genuine issue of fact

existed, respondent relied on the evidence supplied by petitioner as well as the Amended Respondent's Responses to Petitioner's First Request for Admissions ("Answers to Admissions") and three affidavits provided by his employee Joe Meyer ("Mr. Meyer"), and his sisters, Joyce Dillingham ("Ms. Dillingham") and Sara Dillingham Surrett Skowron ("Ms. Skowron"). Mr. Meyer swore in his affidavit that the consideration for the Dillingham Farm, the Fender Tract, the Gragg Tract, the Rental Home, the Randall Drive Property, and the Marital Home was provided solely by respondent. He also averred that the properties were titled to the parties as tenants by the entirety to keep them in "safekeeping in a constructive and/or resulting trust for [respondent] to be ultimately passed on to [the parties'] son Drew." Similarly, Ms. Dillingham and Ms. Skowron indicated in their affidavits that the consideration provided for the Dillingham Farm and the Rental Home, whether it be through services to the grantors or with actual money, came from respondent. Additionally, Ms. Dillingham averred that the respondent's intention in acquiring the properties was so that they could be passed on to Drew.

After considering the parties' submissions, the trial court issued its order granting petitioner's Motion for Summary Judgment with respect to both respondent's defenses and counterclaims on 7 November 2008. Respondent appeals.

On appeal from an order granting summary judgment, this Court conducts a *de novo* review. *Tiber Holding Corp. v. DiLoreto*, 170 N.C. App. 662, 665, 613 S.E.2d 346, 349, *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005). A motion for summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).

> [A]n issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail. A question of fact which is immaterial does not preclude summary judgment.

*Kessing v. Nat'l Mtge. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). In determining whether a genuine issue exists, this Court must view all the evidence "in the light most favorable to the" non-

moving party. *Bruce-Terminex Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

Respondent first asserts summary judgment was improper because a genuine issue of material fact exists as to whether petitioner held seven of the eight properties at issue in a resulting trust for respondent. Respondent concedes that petitioner does not hold her interest in the Equipment Barn in a resulting trust. Therefore, we affirm the trial court's ruling with regard to this property. However, we find that genuine issues of fact exist as to whether petitioner holds the remaining seven properties in a resulting trust for respondent and reverse the trial court's ruling to the contrary.

"A resulting trust arises when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another." *Mims v. Mims*, 305 N.C. 41, 46, 286 S.E.2d 779, 783 (1982) (internal quotation marks omitted), *appeal after remand*, 65 N.C. App. 725, 310 S.E.2d 130, *disc. review denied*, 311 N.C. 305, 317 S.E.2d 681 (1984). Thus, "when one person furnishes the consideration to pay for land, title to which is taken in the name of another, a resulting trust commensurate with his interest arises in favor of the one furnishing the consideration." *Id.* at 46-47, 286 S.E.2d at 784.

> This being true, a resulting trust does not arise where a purchaser pays the purchase price of property and takes the title to it in the name of another unless it can be reasonably presumed from the attending circumstances that the parties intended to create the trust at the time of the acquisition of the property.

*Lawrence v. Heavner*, 232 N.C. 557, 559-60, 61 S.E.2d 697, 699 (1950). Thus, "[w]hether or not a resulting trust arises in favor of the person paying the consideration for a transfer of property to another, depends on the intention, at the time of transfer, of the person furnishing the consideration." *Waddell v. Carson*, 245 N.C. 669, 674, 97 S.E.2d 222, 226 (1957).

However, where the properties are titled in the name of a husband and wife together as tenants by the entirety, there is a presumption that the spouse paying the consideration intended to make a gift of the entirety interest to the other spouse. *Mims*, 305 N.C. at 47, 56, 286 S.E.2d at 784, 789. Thus, to establish a *prima facie* case, the spouse asserting a claim of a resulting trust must rebut this presumption by clear, cogent, and convincing evidence. *Id.* at 56-57, 286 S.E.2d at 789-90. That party may "rely on all the attendant facts and

circumstances of the transaction" to show no gift was intended. *Id.* at 58, 286 S.E.2d 790 (internal quotation marks omitted).

Respondent first argues that there exists a genuine issue as to whether he supplied the consideration for the properties. After a careful review of the record, we agree.

Petitioner asserts in her affidavit and deposition testimony that the properties were acquired with either her personal funds or the parties' joint funds. However, in his deposition, respondent states that the consideration for the Dillingham Farm, the Fender Tract, the Gragg Tract, and the Rental Home was provided solely by him. In his Answers to Admissions, respondent again denies that petitioner contributed any consideration for these four properties or for the Randall Drive Property. Additionally, Mr. Meyer states in his affidavit that respondent provided the entire consideration for the Dillingham Farm, the Fender Tract, the Gragg Tract, the Rental Home and the Randall Drive Property. Ms. Dillingham and Ms. Skowron present similar evidence in their affidavits with regard to the Rental Home and the Dillingham Farm. In light of this evidence, we hold that genuine issues of fact exist as to whether respondent paid the consideration for the Dillingham Farm, the Fender Tract, the Gragg Tract, the Rental Home, and the Randall Drive Property.

With regard to the Marital Home, petitioner claims that she provided at least $35,000 towards the construction of the house situated on the property. Respondent, in his Amended Petition Answer, indicates that petitioner did contribute at least some of the consideration. However, evidence from Mr. Meyer's affidavit and respondent's Answers to Admissions suggests that the entire consideration for this property and the house constructed on this property came from respondent's inheritance or his own personal funds. Because respondent has presented evidence in opposition to petitioner's summary judgment motion which tends to show that petitioner did not provide any of the consideration for the Marital Home, we find that a genuine issue exists as to this fact. *See Brice v. Moore*, 30 N.C. App. 365, 367, 226 S.E.2d 882, 883 (1976) (noting that, after the moving party has presented evidence showing no genuine issue of fact exists, the opposing party must then "respond, by affidavits or as otherwise provided, by setting forth specific facts showing a genuine issue").

Finally, the evidence in the record before this Court relating to the Foster Farm indicates that petitioner paid a portion of the consideration for its purchase. In fact, respondent, in his Answers to

Admissions, acknowledges that petitioner paid half of the $10,000 down payment for this property. However, there is also evidence in the record that additional consideration, in the form of a promissory note for $50,000, was paid for the Foster Farm, and a genuine issue still exists as to who paid the remaining $55,000 of the purchase price. If respondent can prove at trial that he alone furnished or promised to furnish the remaining consideration, he may be entitled to a resulting trust in the Foster Farm proportional to his contribution. *See Deans v. Deans*, 241 N.C. 1, 7, 84 S.E.2d 321, 325 (1954) (noting that a resulting trust is "limited in proportion to [the party asserting a resulting trust's] contribution to the whole purchase price"); *see also Miller v. Rose*, 138 N.C. App. 582, 591, 532 S.E.2d 228, 234 (2000) (stating that "[a]n enforceable promise to pay money toward the purchase price made prior to title passing, and subsequent payment made pursuant to that promise, may serve as adequate consideration to support a resulting trust"). Thus, we conclude that an issue of fact exists as to whether respondent provided the consideration for the properties.

However, as stated above, when the properties are deeded to a husband and wife as tenants by the entirety, the spouse asserting the existence of a resulting trust, in order to prevail, must not only show that he provided the consideration for the property, he must also rebut by clear, cogent, and convincing evidence the presumption that he intended a gift of the entirety interest. *Mims*, 305 N.C. at 56-57, 286 S.E.2d at 789-90. Thus, even though there may be a conflict in the evidence with regard to the source of consideration for the properties, the issue is not a material one enabling respondent to survive petitioner's summary judgment motion unless there is also a genuine issue of fact regarding the gift presumption. *See id.* at 57, 286 S.E.2d at 790. Therefore, we must now determine whether the evidence in the record creates a genuine issue regarding respondent's intent to gift the entirety interest in the properties, enough that he would be able, at trial, to rebut the presumption of a gift by clear, cogent and convincing evidence.

Respondent contends he has offered evidence to rebut the presumption that he intended a gift through evidence in the record that the parties entered into a verbal agreement in 1985 "to preserve the old Dillingham legacy." The evidence in the record surrounding this 1985 agreement reveals that it was the lifelong desire of respondent to put "back together the property that was Dillingham property." Thus, respondent alleges that, when the parties contemplated acquiring the properties in 1985, they, accordingly, agreed that the proper-

ties would "pass to [respondent]" and then ultimately "pass to [p]etitioner's and [r]espondent's only son and [r]espondent's only child, Drew Dillingham." Respondent testifies in his deposition that he had always intended to be the sole owner of the properties. Mr. Meyer, in his affidavit, states that it was understood between the parties that the properties were "held for safe keeping in a constructive and/or resulting trust for [respondent] to be ultimately passed on to son Drew." The party opposing summary judgment need not show that he can prevail on the issue, but only that an issue of fact exists. *Gregorino v. Charlotte-Mecklenburg Hosp. Auth.*, 121 N.C. App. 593, 595, 468 S.E.2d 432, 433 (1996). The weight and convincing force of the evidence is for the fact finder. *Rauchfuss v. Rauchfuss*, 33 N.C. App. 108, 115, 234 S.E.2d 423, 427 (1977). We believe respondent has forecast sufficient evidence to permit the fact finder to find that he has rebutted the presumption that he intended the entirety interest in the properties as a gift. *See Mims*, 305 N.C. at 59, 286 S.E.2d at 791 (concluding that a husband who presented evidence in opposition to his wife's summary judgment motion that he "supplied the entire purchase price for the property" and "at all times intended for the property to be his alone" was sufficient "to rebut the presumption of a gift"). Though petitioner denies that this agreement was ever made or that it was ever intended that respondent be the sole owner of the properties, it is not the role of "the court [,on summary judgment,] to *decide* an issue of fact." *Vassey v. Burch*, 301 N.C. 68, 72, 269 S.E.2d 137, 140 (1980). Accordingly, we find that a genuine issue of fact exists as to whether petitioner holds her interest in the properties in a resulting trust for respondent, and we therefore reverse the trial court's grant of petitioner's summary judgment motion on this issue.

Petitioner, in urging a different result, first argues that respondent failed to timely provide his Answers to Admissions, making the matters contained therein "conclusively established." However, the settled record before this Court contains a document, filed 3 November 2008, in which respondent provided answers to petitioner's Request for Admissions. There is no indication in the record that the trial court considered respondent's answers untimely or that it deemed the facts set out in Petitioner's Request for Admissions conclusively established, and this Court "may not indulge in speculation" as to facts outside the record. *C. C. T. Equip. Co. v. Hertz Corp.*, 256 N.C. 277, 285, 123 S.E.2d 802, 808 (1962). Thus, as the parties have included respondent's Answers to Admissions in the settled record on appeal, we must consider them in our analysis.

Petitioner next argues that respondent's claim of a resulting trust is barred by the ten year statute of limitations. It is well established that a claim of a resulting trust is "governed by the ten year statute of limitations." *Howell v. Alexander*, 3 N.C. App. 371, 381, 165 S.E.2d 256, 263 (1969). However, the ten years do not begin to run until the party asserting a resulting trust has notice that the other party is "claiming the subject property adversely to them." *Brisson v. Williams*, 82 N.C. App. 53, 61, 345 S.E.2d 432, 437, *disc. review denied*, 318 N.C. 691, 350 S.E.2d 857 (1986). "Moreover it is established . . . that the statute of limitations does not run against a *cestui que trust* in possession." *Cline v. Cline*, 297 N.C. 336, 348, 255 S.E.2d 399, 406-07 (1979). Instead, "[t]he statute [of limitations for a resulting trust] begins to run only from the time the trustee disavows the trust and knowledge of his disavowal is brought home to the *cestui que trust*, who will then be barred at the end of the statutory period." *Id.* at 348, 255 S.E.2d at 407. Here, the record reveals that respondent has been in possession of the properties since the time they were acquired. Additionally, the first time petitioner asserted a claim to the properties adverse to respondent was on 22 July 2004 when petitioner filed her complaint for equitable distribution claiming an interest in the properties. Since respondent first asserted his claim of a resulting trust on 26 November 2007, he was well within the ten year statute of limitations, and petitioner's argument to the contrary fails.

Petitioner also suggests that respondent is barred from asserting the claim of a resulting trust by the doctrine of judicial estoppel. "Judicial estoppel requires proof of three elements: (1) the party's subsequent position is clearly inconsistent with an earlier position; (2) the earlier position was accepted by a court, thus creating the potential for judicial inconsistencies; and (3) the change in positions creates an unfair advantage or unfair detriment." *N.C. State Bar v. Gilbert*, 189 N.C. App. 320, 328, 663 S.E.2d 1, 7, *disc. review denied*, 362 N.C. 682, 670 S.E.2d 234 (2008). In the previous equitable distribution case, respondent asserted that petitioner had an "ownership interest" in the properties. However, this position is not clearly inconsistent with respondent's claim in the present partition action, as respondent even admitted in his Amended Partition Answer that petitioner was in fact listed on the deeds as a grantee. Thus, we find that respondent's claim of a resulting trust is not barred by the doctrine of judicial estoppel.

Finally, petitioner contends respondent cannot allege the existence of a resulting trust based on an oral agreement. Specifically

petitioner argues that since a resulting trust "does not . . . depend on any agreement between the parties," *Mims*, 305 N.C. at 46, 286 S.E.2d at 783, respondent cannot rely on the 1985 agreement to establish a resulting trust. We disagree with petitioner's view of respondent's argument concerning the 1985 agreement. We view the agreement as evidence of respondent's intent not to gift the entirety interests in the properties. Thus, petitioner's argument fails. Accordingly, we find that a genuine issue exists as to whether petitioner holds her interest in the properties in a resulting trust for respondent, and we reverse the trial court's holding to the contrary.

Respondent next argues that the trial court erred in granting petitioner's summary judgment motion with regard to his defense of estoppel. Specifically, respondent contends the evidence concerning the 1985 agreement creates a genuine issue of fact as to whether petitioner waived her right to partition. We agree.

In discussing the doctrine of estoppel as it relates to partition proceedings, our Supreme Court has explained that "[a]s a general rule it is a matter of right for a tenant in common to have partition. But it is well established that a cotenant may waive his right to partition by an express or implied agreement." *Chadwick v. Blades*, 210 N.C. 609, 612, 188 S.E. 198, 200 (1936) (internal quotation marks omitted). Thus, it has been said that "[e]quity will not award partition at the suit of one in violation of his own agreement, or in violation of a condition or restriction imposed on the estate by one through whom he claims." *Id.* (internal quotation marks omitted). "Such an agreement may be verbal, if it has been acted upon, and it need not be expressed, but will be readily implied, and enforced, if necessary to the protection of the parties." *Kayann Props., Inc. v. Cox*, 268 N.C. 14, 20, 149 S.E.2d 553, 557 (1966) (internal quotation marks omitted).

As stated above, when the evidence is viewed in the light most favorable to respondent, it reveals that the parties agreed, in 1985, to acquire the properties so that they would "pass to [respondent,]" and then ultimately "pass to [p]etitioner's and [r]espondent's only son and [r]espondent's only child, Drew Dillingham." Though this agreement does not contain an express promise not to seek partition, this fact alone is not fatal to respondent's claim. This Court, in *Kayann Properties, Inc. v. Cox*, was presented with an agreement between the parties that did not expressly prohibit partition. *Id.* at 20, 149 S.E.2d at 558. However, this Court found that it was "apparent . . . both from the instrument itself and from the circumstances surrounding its execution that neither party considered the possibility of

partition during the life of [the wife]." *Id.* In line with this reasoning, it is apparent from the language of the agreement in the present case that the parties intended the properties to go to their son, thus implying the parties' intention not to seek partition. Accordingly, although petitioner presents evidence indicating that the parties entered into no such agreement, our review of a grant of summary judgment, "does not authorize the court to *decide* an issue of fact." *Vassey*, 301 N.C. at 72, 269 S.E.2d at 140.

Petitioner argues that there is no genuine issue of material fact because the defense of estoppel cannot be based on an oral agreement that does not comply with the Statute of Frauds. However, as stated above, an agreement not to partition "may be verbal, if it has been acted upon, and it need not be expressed, but will be readily implied, and enforced, if necessary to the protection of the parties." *Kayann Props., Inc.*, 268 N.C. at 20, 149 S.E.2d at 557 (internal quotation marks omitted).

Finally, petitioner argues that summary judgment was proper because respondent did not "allege the existence of an oral agreement in his pleadings." After a careful review of the record, we find that this argument has no merit. In fact, in respondent's Amended Partition Answer, he alleges that "[t]he parties understood that, despite the title, these properties would remain the sole property of the [r]espondent and that they would pass, as a whole, to the parties' only son." We find that this statement sufficiently describes the alleged agreement between the parties, enough that petitioner would have notice of respondent's claim. *See* N.C. Gen. Stat. § 1A-1, Rule 8(a)(1) (2009) (requiring pleadings to contain only "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved"). Accordingly, a genuine issue of fact exists as to respondent's equitable defense of estoppel.

Respondent finally argues that the trial court erred in granting summary judgment with regards to his equitable defense of laches. We disagree.

In defining the equitable defense of laches,

> our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of

each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001). Though respondent cites this Court to the legal definition of the equitable defense of laches in his brief, he fails to provide any argument as to why this defense should apply to the present case. Thus, his assignment of error as it relates to the equitable defense of laches is deemed abandoned. N.C.R. App. P. 28(b)(6) (amended Oct. 1, 2009).

Therefore, we affirm the trial court's grant of petitioner's Motion for Summary Judgment dismissing respondent's counterclaim alleging that petitioner holds title to the Equipment Barn in a resulting trust and dismissing his equitable defense of laches. We reverse the grant of summary judgment dismissing respondent's counterclaims that petitioner holds title to the remaining properties in a resulting trust for him and dismissing his equitable defense of estoppel. We remand for further proceedings consistent with this opinion.

Affirmed in part, Reversed in part, and Remanded.

Judges JACKSON and ERVIN concur.